## Neczypor *v.* Jacobs, Appellant.

304

Argued November 15, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

re-argument refused April 21, 1961.

*Irving R. Shull*, with him *Alfred I. Ginsburg*, and *Bernard L. Lemisch*, for appellant.

*Miles Warner*, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 28, 1961:

Stephen S. Neczypor, the plaintiff in this case, obtained a verdict of $4,000 against Joseph Jacobs, the defendant, in an action of malicious prosecution. The defendant appealed to the Superior Court which affirmed the verdict. We granted allocatur.

Reading the record with all conflicts in testimony, and all inferences rising therefrom, as resolved in favor of the plaintiff, the following narrative is warranted. On June 4, 1955, Stephen Neczypor engaged himself to chauffeur for his friend John Lew, who was being married in Philadelphia. After the religious ceremony at church and the taking of the bridal pictures, Neczypor started home to get his wife to take her to the wedding reception scheduled for that evening. It was then after 4 p.m.

As he proceeded northwardly on Fifth Street, his car was bumped in the rear by another car being driven by the defendant in this case, Joseph Jacobs. It does not appear that the bump was a severe one, but it would seem that the lesser the damages in collisions of this kind the more apt the drivers are to enter into wordy warfare, each accusing the other of stupidity, gross carelessness and unflattering antecedents. Jacobs, who was a city detective dressed in street

clothes, informed Neczypor that he had better be careful since he could give him a ticket. Neczypor retorted: "That don't give you no license to run into my automobile."

Operators' licenses and automobile registration cards were exchanged and the episode apparently ended. Both drivers got into their respective cars and continued on their respective journeys.

A few minutes later Jacobs passed Neczypor on the road and the latter noted that Jacobs' car was carrying a dealer's license plate. He pursued and caught up with Jacobs and said to him: "You know you showed me the wrong owner's card," and Jacobs said to Neczypor: "What are you going to do about it?"

As events were to turn out, Neczypor would have fared better if he had said he was going to do nothing about it, and had gone on to participate in the wedding festivities. Instead, he replied to Jacobs: "What do you think I am going to do about it? I am going to get a cop."

And he set out in search of a "cop." At Fifth and Lehigh he found two uniformed policemen and he complained to them: "Look can you help me? A guy just ran into my car. He says he is a cop. He had dealer's tags on it and it looked kind of fishy to me."

Jacobs soon appeared on the scene and spoke to one of the policemen who now asked Neczypor if he wanted to go to the police station. Neczypor replied: "Certainly. I have nothing to lose." In this he was a poor prophet. When he arrived at the station a policeman "frisked" him. The police sergeant on duty ordered him "frisked" the second time. When Neczypor explained that he had already been searched, the sergeant, according to Neczypor, "smashed" him in the face, breaking his glasses and cutting his face.

Neczypor asked: "What did you do that for?"

Jacobs spoke up: "I am going to railroad this . . . S.B."

Neczypor was taken to a police cell and locked up. Later he was examined by a police surgeon who asked him about consumption of intoxicating beverages. Neczypor explained that that morning, in toasting the wedding of his friend, he had two glasses of whiskey and a couple glasses of beer. It was now about 7 p.m.

He was returned to the cell. Still later he was handcuffed, placed aboard a police van and driven to City Hall where he was fingerprinted and photographed, the resulting picture showing the cut under his eye. He was then returned to the police cell. That evening his brother and a lawyer arrived and his release was effected.

The next day, at a hearing before a committing magistrate he was formally charged with operating an automobile under the influence of intoxicating liquor. In due time he was indicted and on that indictment he stood trial February 9, 1956 in the court of quarter sessions before a judge and jury. He was acquitted.

Now he brought a civil action in trespass against Joseph Jacobs, charging him with malicious prosecution. The defendant joined issue and the case went to trial on January 8, 1958 before Judge CARROLL. Neczypor's attorney, in opening his case to the jury, made some improper remarks, a juror was withdrawn and the case continued.

In April, 1958, the case was tried again, this time before Judge LEVINTHAL and a jury. The jury returned a verdict in favor of Neczypor in the sum of $1500. Jacobs appealed to the Superior Court which ordered a new trial because of trial errors.

In April, 1959, Neczypor and Jacobs, who were now apparently making a career of this case, appeared in court to oppose each other for the fourth time before a jury. This time the jury seemed to see

more injury in Neczypor than the previous jury had seen and awarded him a verdict of $4,000. The defendant again appealed to the Superior Court which, on a divided court of 4 to 3, affirmed the verdict. As already stated, we granted allocatur.

In this Court, Jacobs argues that he is entitled to judgment n.o.v. on the basis that the facts in the case demonstrate that he had probable cause to arrest and criminally prosecute Neczypor.

If, indeed, Jacobs had probable cause to take Neczypor into legal custody, he may not be held liable in damages, even though Neczypor was acquitted of the criminal charge. By probable cause is not meant an actual state of guilt. One is justified in launching a criminal prosecution if the facts convince him, as a reasonable, honest and intelligent human being, that the suspected person is guilty of a criminal offense. The arresting person may be in error, but if his error is an honest one, not motivated by personal malice, bias, or revenge, the law will hold him harmless, regardless of the eventual result of the criminal prosecution.

It would be a deplorable state of affairs if every police officer had to worry about the possibility of a civil action against him every time he arrested a seeming malefactor. Such a situation could conceivably lead to slackening of effort against crime because officers might feel that every time they chased an assumed lawbreaker they had to follow a thin chalk line, the slightest deviation from which would take them into civil court as a defendant. For that reason, the law is quite specific that a police officer, or anyone for that matter, may arrest on probable cause of criminal activity or participation. "In an action of malicious prosecution, plaintiff does not make out a prima facie case by proving only his arrest on a criminal charge and its termination in his favor. He

must also show that 'the defendant did not have probable cause for initiating the proceedings': Sec. 672c Restatement, Torts. The issue on this phase of the case is: Did the defendant 'honestly believe' that the accused committed the crime for which he was prosecuted and was that belief based on 'a reasonable ground of suspicion of guilt': Taylor v. Shipbuilding Corp., supra. Plaintiff must further show that the prosecution was motivated by malice, or, to put as the Restatement of Torts, Sec. 672, expresses it, that the 'primary purpose for which the proceedings were initiated was not to bring an offender to justice':" (*Simpson v. Montgomery Ward*, 354 Pa. 87, 96).

On the other hand, the general public is entitled to be protected from abuse of police authority, which, history reveals, cannot be ruled out as impossible. One of democracy's principal functions is to prevent, to the extent that it is possible, the abuse of governmental power. The authority of a police officer to cause the arrest of anyone is almost absolute. It is conceded that that kind of authority is needed for, if, in the rapidly moving action of a potential crime, the police officer had to weigh theories and possibilities, consult history and code before he could halt a person fleeing from an ostensible crime, many a criminal would escape his just deserts and society would suffer. However, when no immediate action is called for and time may be devoted to adequate preliminary investigation, the protection of the individual demands such an investigation because the hardships, humiliation, suspense and expense to which an innocent person is subjected in an improper prosecution cannot be compensated for by a mere acquittal.

In the case at bar the police officer Jacobs should have moved with considerable circumspection, because he himself, it seems, had a personal ax to grind with Neczypor. A police officer should be as direct as a

bullet when the occasion demands, but as impartial as the sunlight at all times. Jacobs' impartiality came into question since he was involved in a personal altercation with the person he forced into the macerating jaws of a criminal prosecution.

Jacobs testified that when he first saw Neczypor he was driving his car in a zigzag fashion. He stopped him, talked with him and smelled alcohol on his breath. He, however, did not arrest him, explaining that Neczypor told him he had been taking medicine. Neczypor proceeded on his way, but later, when Jacobs became offended at Neczypor's attitude and language he arrested him. If Jacobs did not believe Neczypor was under the influence of alcohol when he first watched him zigzagging and after he had talked with him, why did he regard him intoxicated later (Neczypor not having taken any liquor meanwhile) because offensive language had been added to the reputed zigzagging?

In arresting and prosecuting Neczypor, was Jacobs interested in bringing an offender to justice or was he intent on revenging himself against Neczypor because of the latter's assumed disrespectful and insulting attitude toward him?

Jacobs' remark, as testified to by Neczypor, that "I am going to railroad this . . . S.B." undoubtedly told heavily against him with the jury.

In his charge to the jury, the trial judge submitted eleven interrogatories for special findings of fact. One of those interrogatories read: "At the time and prior to the time of the arrest, that is, while plaintiff was observed by the defendant to be operating his automobile on 5th Street between Girard and Lehigh Avenue, —did the defendant honestly and reasonably believe that plaintiff was operating his automobile while under the influence of intoxicating liquor?"

The jury replied to this question with a flat negative. Thus, we have a finding of fact that Jacobs had no factual basis upon which to base his conclusion that Neczypor was under the influence of intoxicating liquor.

Another interrogatory read: "Did the defendant cause the arrest and prosecution of the plaintiff for a malicious purpose, that is,—do you believe that the primary purpose of the defendant was NOT to bring an offender to justice?"

The jury answered this question Yes. This answer supplied the ingredient of malice, indispensable in an action of malicious prosecution.

From these answers it is apparent that the jury found that Jacobs did not arrest Neczypor because he actually believed him to be under the influence of intoxicating liquor, but because he was piqued over their double encounter, first, when their cars came together, and, second, when Neczypor addressed taunting remarks to him.

The defendant contends in this appeal that the interrogatories submitted by the judge to the jury were "inadequate as to form and content." Judge ERVIN, who wrote the opinion for the Superior Court in this case, excellently summed up the interrogatories as follows: "The interrogatories expressly covered the issues of plaintiff's arrest and prosecution by defendant, his subsequent acquittal, whether the arrest and prosecution were maliciously motivated, whether defendant honestly and reasonably believed plaintiff to have operated his automobile erratically, to have acted belligerently, to have had an alcoholic breath, whether plaintiff, in fact, operated an automobile under the influence of intoxicating liquor and whether defendant honestly and reasonably believed that he was. The last interrogatory related to damages."

To have added more interrogatories or stretched the eleven to a greater length would have made them subjects of tautology and confusion, and thus less understanding to the jury.

The defendant also complains that the verdict of $4,000 was excessive. Judge ERVIN also well disposed of this item in his opinion, namely: "The special damages which the jury could properly consider were in the sum of $625. The plaintiff suffered the fear and humiliation incident to being arrested, fingerprinted and photographed as a member of the 'rogues gallery'; he was incarcerated for several hours during which time he was physically prevented from communicating with his waiting and anxious family; he was physically abused, being struck in the eye and cut; he was required to undergo the emotional distress incident to the criminal trial, together with the attendant risk of conviction; his reputation has been permanently injured and his eligibility for future employment adversely affected. The plaintiff had a clean record and had never been convicted of any crime. In this day, with the decreasing purchasing power of the dollar being ever present, we do not believe that the verdict was so excessive as to shock the conscience of a judge."

Judgment affirmed.

DISSENTING OPINION BY MR. CHIEF JUSTICE JONES AND MR. JUSTICE BENJAMIN R. JONES:

Mr. Chief Justice JONES and Mr. Justice BENJAMIN R. JONES dissent on the ground that the evidence adduced to establish a want of probable cause was insufficient to warrant its submission to the jury and that the trial judge should, therefore, have ruled as a matter of law that there was probable cause for the plaintiff's arrest and prosecution.

DISSENTING OPINION BY MR. JUSTICE BELL:

The cases are universally agreed that in a malicious prosecution suit plaintiff must prove both want of probable cause and malice. The majority opinion has confused malice with probable cause, and acquittal of the crime with want of probable cause, i.e., lack of reasonable grounds to believe plaintiff was guilty of driving while under the influence of intoxicating liquor, even though plaintiff (1) admitted his eyes were bloodshot when he was arrested and examined, and (2) admitted that he had been drinking whiskey and beer, and (3) (a) did not deny that he had zigzagged, or (b) that he had the odor of alcohol on his breath, or (4) that a doctor and four witnesses testified that he was intoxicated.

The basic mistakes of the majority opinion are three fold: (1) It changes the well established law of Pennsylvania as to the test for and the determination of probable cause, which is the first and most indispensable requisite in malicious prosecution cases; (2) it makes the evidence as to defendant's guilt or innocence the real test of probable cause and holds that a finding of want of probable cause by a jury or trial judge raises only a question of abuse of discretion; and (3) it confuses malice (which is usually a question for the jury) with probable cause which (in all cases such as the instant one) is a question of law for the Court.

Expressed in another way, the majority opinion (a) substitutes the innocence of the person arrested for the reasonable and justifiable ground for the belief of the arresting officer in the guilt of the person arrested, and (b) impliedly overrules many recent decisions of this Court,* and (c) changes the function

---

* The proof of the pudding is in the eating. See cases herein cited and also 19 cases which are listed in *Miller v. Pennsylvania*

**314**

of the Court when the testimony of the witnesses for the defendant clearly shows probable cause and *such* testimony is not denied or controverted by the plaintiff,* and (d) by subjecting officers to large civil damages when a person arrested for a criminal offense is acquitted of the crime, it realistically restricts police arrests of actual criminals and (reasonably) suspected criminals and *gravely jeopardizes law enforcement* and the protection and safety of law-abiding citizens.

The law up to now has been clearly settled by a myriad of cases that when a defendant in a malicious prosecution action clearly shows by oral testimony or evidence, or when plaintiff's evidence shows, "probable cause" for the arrest and prosecution of the civil plaintiff, probable cause or lack of it is a matter which is exclusively within the province of the court.* All authorities agree that "probable cause" does not depend on the innocence or guilt of the person arrested but upon whether reasonable grounds existed for the arrester's belief that the arrested is guilty of the crime for which he was arrested or indicted: *Miller v. Pennsylvania Railroad Co.,* 371 Pa. 308, 89 A. 2d 809; *Simpson v. Montgomery Ward & Co.,* 354 Pa. 87, 46 A. 2d 674; *Altman v. Standard Refrigerator Co.,* 315 Pa. 465, 173 A. 411; *Werner v. Bowers,* 318 Pa. 518, 178 A. 831; *McClafferty v. Philp,* 151 Pa. 86, 24 A. 1042.

---

*Railroad Co.,* 371 Pa. 329, 330, in which a nonsuit, binding instructions or judgment non obstante veredicto were entered for defendant.

  * The proof of the pudding is in the eating. See cases herein cited and also 19 cases which are listed in *Miller v. Pennsylvania Railroad Co.,* 371 Pa. 329, 330, in which a nonsuit, binding instructions or judgment non obstante veredicto were entered for defendant.

In *Miller v. Pennsylvania Railroad Co.*, supra, the Court entered judgment for defendant non obstante veredicto although plaintiff had testified (1) that he was previously of good repute; (2) that he was acquitted of the crime charged; (3) that he protested his innocence from the time of his arrest and throughout the entire proceedings; (4) that the stolen goods were not found in his home or in his possession; (5) that Captain Monaghan stated that if plaintiff were innocent he should fight the charge the whole way; and (6) that none of his testimony was disputed nor was any issue of fact raised concerning the same. The Court said (page 314): " 'The question of want of probable cause is exclusively for the court. . . .'

"Plaintiff has the burden of proving want of probable cause: Simpson v. Montgomery Ward & Company, 354 Pa. 87, 46 A. 2d 674. Probable cause has been defined as a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense: Altman v. Standard Refrigerator Company, Inc., 315 Pa. 465, 173 A. 411."

The reason for holding that probable cause or lack of it is a matter exclusively for the Court has been recognized for centuries and has been reiterated in many decisions of this Court during the last decade. In *Simpson v. Montgomery Ward & Co.*, 354 Pa., supra, the Court said (pages 92-93): ". . . It has been immemorially held that the public interest requires that the legally trained mind of the judge and not the more or less emotional minds of jurors, decide whether or not there was probable cause for the initiation of the prosecution. Jurors are likely to confuse the issue of the guilt or innocence of the defendant in the criminal case out of which the civil action originated with the basic issue whose determination de-

cides the civil action. That basic issue is the want of probable cause for the criminal prosecution. Blackstone's Vol. 3, Sec. 127 says: 'It would be a very great discouragement to the public justice of the kingdom if prosecutors who had a tolerable ground of suspicion were liable to be sued at law [for malicious prosecution] whenever their indictments miscarried . . . Any probable cause for proving it [the charge] is sufficient to justify the defendant'. . . . In Bryant v. Kuntz, 25 Pa. Superior Ct. 102, judgment on a verdict for the plaintiff was reversed without a venire. Judge ORLADY said: 'The inquiry as to the probable cause goes back to the commencement of the prosecution, and it relates to the facts then known and as they then appeared. It is not confined to the truth of the matters that lead to the prosecution, but extends to their appearance as indicating the guilt or innocence of the accused. If probable cause is shown, it matters not whether the motive of the prosecutor be praiseworthy or malicious; . . . .' "

This malicious prosecution suit arose out of a criminal case in which the present plaintiff was arrested and indicted for, but acquitted of, the charge of operating a motor vehicle while under the influence of intoxicating liquor. The jury ultimately returned a verdict in plaintiff's favor in the instant case for $4,000.

Plaintiff testified that he was arrested by defendant, a city detective, because they had an argument following a collision of their cars in the early evening of June 4, 1955; that he was not intoxicated; that he was beaten up at the station house by a policeman other* than the defendant; and that he was

---

*If a sergeant subsequently smashed Neczypor in the face, as Neczypor testified, but the sergeant denied, Neczypor had an adequate remedy, namely, to arrest the sergeant for assault and bat-

acquitted of the crime of which he was charged. The verbal clash between plaintiff and defendant at the time or shortly after the collision of their automobiles might tend to prove malice upon the part of the defendant but, as we shall see, cannot possibly prove lack of probable cause—probable cause was clearly established by defendant and his witnesses. Furthermore, plaintiff admitted that when he was arrested and before any controverted fight, *his eyes were bloodshot* and he had drunk two glasses of whiskey and two beers that morning, approximately 5 hours prior to his arrest.

Defendant testified that no collision occurred between their cars and his testimony on the point of collision was corroborated by the testimony of a disinterested witness, viz., that no scratches or other visible evidence of a collision or damage appeared on defendant's automobile. However, all of this, as we shall see, was irrelevant on the question of probable cause.

Furthermore, plaintiff must prove both lack of probable cause and malice. While malice is a question which is generally for the jury, unless plaintiff proved that there was a lack of probable cause *malice is immaterial and irrelevant*: *Werner v. Bowers,* 318 Pa., supra; *McCoy v. Kalbach,* 242 Pa. 123, 88 A. 879; *Dietz v. Langfitt,* 63 Pa. 234; *Roessing v. Pittsburg Railways Company,* 226 Pa. 523, 526, 527, 75 A. 724; *McClafferty v. Philp,* 151 Pa. 86, 24 A. 1042; *Simpson v. Montgomery Ward & Co.,* 354 Pa., supra.

In *Werner v. Bowers,* 318 Pa., supra, the Court reversed a verdict and judgment for plaintiff and,

---

tery and also bring a civil suit against him for damages. However, the sergeant's alleged assault would not and could not justify a suit against Jacobs for malicious prosecution. See cases, infra.

318

speaking through Mr. Justice (later Chief Justice) SCHAFFER, said (pages 521, 521-522), where probable cause appears: " '. . . the court must so declare, and direct a verdict for defendant': Taylor v. American International Shipbuilding Corp., 275 Pa. 229, 231; *and this is so even if malice is shown:** Roessing v. Pgh. Rys. Co., 226 Pa. 523. 'The burden is upon the plaintiff to prove affirmatively, by circumstances or otherwise, as he may be able, that the defendant had no reasonable or probable ground for instituting the original proceedings': Altman v. Standard Refrigerator Co., Inc., 315 Pa. 465, 477. See also Groda v. American Stores Co., 315 Pa. 484.

". . . 'Where *a defendant* in an action for malicious prosecution *shows probable cause,* his motives in instituting the prosecution are of no consequence, become immaterial and cannot be taken into consideration by court and jury. . . . If there be reasonable or probable cause, *no malice, however distinctly proved, will make defendant liable*': McCoy v. Kalbach, 242 Pa. 123, 127; Dietz v. Langfitt, 63 Pa. 234."

In the light of the aforesaid authorities, we shall consider the evidence. We have summarized hereinabove plaintiff's testimony. On the other hand, two police officers, and a police sergeant, and a police doctor who examined plaintiff one and a half hours after his arrest, and this detective-defendant—four laymen and a doctor—testified that the present plaintiff was intoxicated and *the fact that they so testified was not denied or controverted by plaintiff.* Defendant also testified and plaintiff did not deny that plaintiff's car zig-zagged, and that he had the smell of alcohol on his breath. If that evidence isn't sufficient to show "probable cause" for an indictment, then there is no such thing as "probable cause". Furthermore, it is

---

* Italics throughout, ours.

important although unnecessary to note that plaintiff was held for Court by a magistrate and indicted by a grand jury. "It is everywhere held that the actions of each of these judicial bodies are affirmative evidence of probable cause: Restatement, Torts, §§663(2) and 664(2)": *Miller v. Pennsylvania Railroad Co.*, 371 Pa., supra, page 317.

Upon such a record it is clear as crystal, under all the aforesaid authorities, although indeed no authority is necessary, that *defendant had a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in believing that the plaintiff was guilty of the offense of driving while intoxicated,* and the Court should hold as a matter of law that probable cause existed.

The danger and the foolishness of changing the law and allowing this plaintiff to recover in the face of the aforesaid testimony at both the criminal and civil trials *which demonstrated reasonable grounds for Jacobs' belief in the present plaintiff's guilt* lies in the inescapable fact that it will inevitably seriously restrict the arrest by policemen of actual and reasonably suspected criminals and it will gravely and greatly jeopardize the protection of the public against the terrific crime wave which is sweeping our City, State and Country.