437 A.2d 18

James R. SHELTON

v.

Ethel EVANS, Sarah Evans Howard, Theresa Evans, Bernice Pinnick Matthews and Benjamin Amos.

Appeal of Benjamin AMOS.

Superior Court of Pennsylvania.

Argued Jan. 12, 1981.

Filed Nov. 6, 1981.

230

David B. Washington, Pittsburgh, for appellants.

H. David Rothman, Pittsburgh, for appellee.

Before SPAETH, SHERTZ and MONTGOMERY, JJ.

SPAETH, Judge:

This is an appeal from an order denying a motion for judgment n.o.v. or new trial. The action is for malicious prosecution. The jury returned a verdict of $20,000 compensatory damages and $30,000 punitive damages. Appellant argues that the verdict was not supported by the evidence, and was excessive. Finding no merit in either of these arguments, we affirm.

**1**

This action was brought in April 1969. In July 1973 the case was tried. When appellant failed to appear, findings by a judge sitting without a jury of $2,500 compensatory damages and $2,500 punitive damages were entered against him. On June 17, 1976, appellant petitioned to open the judgment that had been entered on the findings. The petition was granted on May 25, 1977, and the case was retried, before a jury, in November 1979. The evidence may be summarized as follows.

Appellee, James R. Shelton, was a self-employed plumber, and a life-long friend of Robert and Jessie Evans. He had often made repairs on properties owned by the Evanses. Robert Evans died in 1946. Jessie Evans died in 1967 and in her will named appellee as her sole heir. Her executor, a Pittsburgh attorney, asked appellee to collect the rents on the properties in her estate. Appellee did, depositing the rents he collected in a special account. The executor also transferred an automobile from the estate to appellee.

Appellant, Benjamin Amos, was an attorney practicing in the District of Columbia. He represented several relatives of Robert Evans who were pressing claims against the estate under a contingent fee arrangement whereby appellant would receive a percent of the monies he succeeded in recovering from the estate. Appellant associated himself with a Pittsburgh attorney, Robert Truel. Truel served appellee with a notice of deposition. Answering all questions put to him, appellee was deposed for two days concerning his involvement with the estate. A couple of weeks after the deposition, a constable appeared at appellee's home late in the evening. In the presence of his wife, appellee was served with a warrant for his arrest on four separate criminal complaints alleging that he had wrongfully converted assets of the estate. The complaints were signed by a relative of Robert Evans, Ethel Evans, whom appellee had known all his life. When the constable ordered appellee to accompany him back to the jail, appellee called his attorney,

who convinced the constable that appellee need not go to jail but would appear to answer the charges.

Two hearings were held before the magistrate. On March 12, 1968, Ethel Evans appeared but offered no evidence in support of any of the four complaints. At appellant's request, the magistrate postponed the proceedings until April 16, 1968, at which time appellant asked that the charges all be withdrawn.

There is no question but that the charges were baseless. Truel testified that he first learned of the charges from appellant. He further testified that Ethel Evans, an elderly, uneducated woman, did not understand either the contents of the charges or the nature of the criminal process she had invoked, and that appellant had asked him to sign the complaints. He further testified that after the first hearing, appellant had assumed the responsibility for gathering evidence to support the charges but never asked him to verify the transfer of the automobile—an asset alleged to have been wrongfully converted.

■ A cause of action for malicious prosecution requires that the following elements be proved:

A private person who initiates or procures the institution of criminal proceedings against another who is not guilty of the offense charged is subject to liability for malicious prosecution if

(a) he initiates or procures the proceedings without probable cause and primarily for a purpose other than that of bringing an offender to justice, and

(b) the proceedings have terminated in favor of the accused.

.Restatement (Second) Torts § 653.

See also, Neczypor v. Jacobs 403 Pa. 303, 308–09, 169 A.2d 528, 531 (relying on Restatement of Torts § 672).

■ The jury was entitled to find that each of these elements had been proved. The proceedings did terminate in appellee's favor. No evidence suggested that the proceed-

ings were initiated with probable cause. To the contrary, the jury could reasonably have concluded that the purpose behind the complaints was not to "bring[ ] an offender to justice" but to induce appellee to relinquish some or all of his claims as sole heir named in the will. Finally, the jury could reasonably have concluded that it was appellant, and not Ethel Evans, who had "initiate[d] or procure[d] the proceedings," and that he had done so because under his contingent fee agreement a recovery against the estate would be to his financial advantage.

We therefore conclude that so far as the issue of liability is concerned, the lower court properly denied appellant's motion for judgment n.o.v. or new trial.

2

■ In determining whether appellant should be granted a new trial on the ground that the jury's verdict was excessive, we must determine whether either of its two awards, $20,000 compensatory damages, and $30,000 punitive damages, was excessive, and not, as appellant suggests, whether the total award of $50,000 was.

a

■ In an action for malicious prosecution, compensatory damages may include all of the plaintiff's actual expenses in defending himself, compensation for loss of liberty or time, harm to reputation, physical discomfort, interruption of business, mental anguish, humiliation, and injury to feelings. *See Howarth v. Segal,* 232 F.Supp. 617 (E.D.Pa.1964); *Lynn v. Smith,* 193 F.Supp. 887 (W.D.Pa.1961); *Biggans v. Hajoca Corp.,* 94 F.Supp. 593 (E.D.Pa.1951) *aff'd* 185 F.2d 982 (3d Cir. 1951).

■ Appellee could prove only $500—the cost of defending himself against criminal charges—as actual out-of-pocket expenses. It is therefore evident that in awarding $20,000 compensatory damages, the jury expressed its opinion of

what represented fair compensation for the intangible injuries appellee had suffered. The award was admittedly considerable; it was not, however, excessive.

As we have mentioned, appellee was arrested, without any warning, in his home and in front of his wife, on four criminal complaints. He almost went to jail. He did have to go to two separate hearings to defend himself. It must have been a nightmare, for he knew he had committed no crime. Moreover, he testified that he had never been arrested before, nor had any criminal charge ever been preferred against him. But there he stood, in the dock, charged by a woman he had known all his life. It was three months before the charges were withdrawn.

Perhaps a young and carefree man might have shrugged all of this off. But appellee was in his fifties, established in his community, a self-employed plumber for thirty years. He testified that suddenly he found himself obliged to explain to his neighbors that he really hadn't stolen anything from Ethel Evans, and that even after the charges were dropped, he had to continue to explain. He also testified that he had a heart condition.

The jury evidently decided that it had before it an honest, sensitive man, who had suffered a great deal. We cannot say that its decision was unreasonable. What hurts more than an unjust accusation? What is more shameful than stealing from a friend? Of course, some experiences *are* more painful than these. Still, the jury's translation of appellee's pain into $20,000 does not seem so unsupported that we must set it aside.

It is always suspect, when considering the adequacy or excessiveness of a verdict, to refer to the verdict in another case, for no two cases are the same. Still, appellant's citation of *Biggans v. Hajoca Corp., supra*, deserves some mention. There the jury awarded $15,000 to each of two plumbing contractors who had been maliciously prosecuted

for stealing plumbing supplies. The court found it unnecessary to consider whether the charge on punitive damages had been correct because, it held,

> Hajoca is unable to show prejudicial error . . . . We cannot say that these awards included any sum representing "smart money," since the compensatory damages, unliquidated in amount, for the humiliation and loss of reputation of two responsible businessmen with families could well attain the amount found by the jury.

*Id.* at 986.

As the court in *Biggans* did not find $15,000 for "humiliation and loss of reputation" excessive compensation, so we do not find $20,000 excessive compensation here.

b

Section 908 of the Restatement of Torts, Second, states:

(1) Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future.

(2) Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant.

Section 908 has been cited with approval by our Supreme Court. *Chambers v. Montgomery*, 411 Pa. 339, 192 A.2d 355 (1963); *Hughes v. Babcock*, 349 Pa. 475, 37 A.2d 551 (1944). In *Chambers* the Court held that no punitive damages should have been awarded because there was no evidence that the assault had been "malicious, wanton, reckless or oppressive." 411 Pa. at 345, 192 A.2d at 358. In *Hughes* the jury awarded $2,500 compensatory damages and $5,000 puni-

tive damages, where the defendant ejected the plaintiff from the defendant's private office with such force as to break the plaintiff's arm. The Court held that punitive damages were proper because, given the degree of force used by the defendant, the jury was entitled to find that he "was guilty of outrageous, wanton, wilful or recklessly violent conduct." 349 Pa. at 481, 37 A.2d at 554. However, the Court also held that punitive damages of $5,000, which the lower court had reduced to $3,000, were excessive and should be further reduced to $1,000. In arriving at this conclusion, the Court took into account that "the compensatory verdict, while not excessive, [was] very substantial," *id.*; that the defendant did have the right to eject the plaintiff, so that "[t]he case is not to be compared . . . with those cases where one, with no justification or provocation, puts his hands upon another's person," *id.*; and that "it was not shown that defendant planned or hoped for bodily injury to plaintiff," *id.*

■ Here, we find no extenuating, but only aggravating, circumstances. As an attorney, appellant enjoyed a considerable educational advantage over appellee, who is a high school graduate. Appellant also enjoyed a position of the highest trust:

> The continued existence of a free democratic society depends upon recognition of the concept that justice is based upon the rule of law grounded in respect for the dignity of the individual and his capacity through reason for enlightened selfgovernment. Law so grounded makes justice possible, for only through such law does the dignity of the individual attain respect and protection. Without it, individual rights become subject to unrestrained power, respect for law is destroyed, and rational selfgovernment is impossible.
>
> Lawyers, as guardians of the law, play a vital role in the preservation of society. The fulfillment of this role requires an understanding by lawyers of their relationship with and function in our legal system. A conse-

quent obligation of lawyers is to maintain the highest standards of ethical conduct.

Code of Professional Responsibility 1 (Final draft 1969). Appellant betrayed this trust. He did not respect the dignity of Ethel Evans but had her sign baseless criminal complaints against appellee. He manipulated the legal system to frighten and humiliate appellee. He did all this, so the jury evidently found, deliberately, without provocation, and for personal gain. The jury's verdict reflects its outrage.

It may be granted that the jury punished appellant severely. However, we do not believe that $30,000 punishment, imposed on one who has acted as appellant did, is so severe that we must characterize it as "excessive."

c

■ Appellant points out that this trial was the second trial, and that at the first trial the verdict was only $2,500 compensatory damages and $2,500 punitive damages. However, we do not regard this fact as sufficient reason to set aside as excessive the later verdicts of $20,000 compensatory damages and $30,000 punitive damages.

If two different juries had heard the evidence and seen appellant, the disparity between the results of the two trials might well be relevant. This is not the case, however. As we have mentioned, the first trial was by a judge sitting without a jury, who entered the verdicts on appellant's failure to appear. Thus, only one jury has seen appellant, which is to say, only one jury has been in a position to arrive at a fully informed judgment regarding appellant's conduct.

Affirmed.

MONTGOMERY, J., files a dissenting statement.

MONTGOMERY, Judge, dissenting:

In my opinion, the verdict in this case is grossly excessive as to both compensatory and punitive damages. For that reason, I would grant a new trial limited to damages only.