## Webb v. Roadway Express Inc.

C.P. of Monroe County, no. 1084 Civil 1997.

*Michael Mancuso,* for plaintiff.
*Ann E. Rhoads,* for defendants Roadway, Slavin and Smedley.
*Christopher W. Gittinger,* for defendants East Coast Janitorial and Miller.

WALLACH MILLER, *J.,* July 26, 2000—Presently before the court are two motions for summary judgment that have been filed: one collectively by Roadway Express, Mark Slavin and Thomas Smedley, Roadway defendants, and one collectively by East Coast Janitorial and Carrie Miller, East Coast defendants. Both motions arise in the context of plaintiff's suit for malicious prosecution, and a review of the record reveals the following facts and procedural history.

Plaintiff was employed by East Coast Janitorial to perform janitorial duties as a dock worker at a facility owned and operated by Roadway Express. At all relevant times, Mark Slavin and Thomas Smedley were managers at the Roadway facility, and Carrie Miller was plaintiff's supervisor at East Coast Janitorial. At approximately 7 a.m. on June 29, 1996, Slavin found plaintiff

using a telephone in Miller's office at the Roadway facility, and he noticed a deflated air bag lying on the floor within a few feet of plaintiff. An air bag is an inflated device that is approximately three feet long and is used by transportation companies to secure packages against movement. When the air bags become punctured or ripped, they are discarded from the Roadway Express trucks to be picked up and disposed of by dock workers such as plaintiff. The dock workers often use the bags as impromptu trash bags, filling them with debris from the docking area before placing the bags in the appropriate waste disposal container. Plaintiff claims that he was using the bag to collect debris when he remembered that he needed to make a telephone call, so he brought the bag into the office to use the telephone on Miller's desk.

When Slavin saw the air bag next to plaintiff, he also saw something inside of the bag and upon removing the object Slavin discovered that the item was a parcel of dresses that was being transported by Roadway Express. Slavin held up the parcel and asked plaintiff: "What is this?" Plaintiff responded: "That's not mine." Slavin brought the air bag, the parcel of dresses, and plaintiff to the office of the manager for the Roadway Express facility, where Slavin informed Smedley about what Slavin had observed, and accused plaintiff of attempting to steal the dresses. Slavin called the police to report the incident, and a little while later Pocono Township police officer Horace Storm arrived at the Roadway Express facility to perform an investigation. Officer Storm took statements from Slavin and Smedley, and later spoke to Miller by telephone. Slavin, Smedley, and Miller all accused plaintiff of stealing the dresses, whereupon Of-

ficer Storm informed plaintiff that charges of theft would be filed against plaintiff. Plaintiff was subsequently ordered to remain off of the Roadway Express property, and he was immediately terminated from his employment with East Coast Janitorial.

Miller provided a notarized statement to Officer Storm on July 2, 1996, which asserted that plaintiff had been involved in a theft situation at the Roadway Express facility on the day in question, and that one of the other East Coast Janitorial employees had observed plaintiff breaking into Miller's office that day approximately one half hour before Slavin found plaintiff in Miller's office with the air bag. On July 2, 1996, Officer Storm filed criminal charges against plaintiff for theft and receiving stolen property. On July 18, 1996, another person employed by East Coast Janitorial as a dock worker at the Roadway Express facility, one James Finnegan, gave a notarized statement concerning plaintiff's actions. Finnegan's statement asserts that at 6:45 a.m. on June 26, 1996, he observed plaintiff standing on top of a barrel outside Miller's office and that plaintiff used the barrel to break into Miller's office by climbing over the wall. Finnegan's statement relates that plaintiff next unlocked the office's door from the inside, and that plaintiff was covered in ink when plaintiff walked through the office door. On the strength of the statements from Miller and Finnegan, on July 26, 1996, Officer Storm filed another criminal charge against plaintiff for criminal trespass.

Following a preliminary hearing before a district justice, all of the charges against plaintiff were bound over to the court of common pleas, where plaintiff pled not guilty to each of the charges. During plaintiff's criminal

trial, at the close of the Commonwealth's evidence, the trial court denied plaintiff's motion for acquittal. As part of the plaintiff's defense evidence, Finnegan took the stand on behalf of plaintiff and recanted the facts alleged in his notarized statement of July 18, 1996. Finnegan further testified that he did not observe the conduct alleged, and that Miller had falsely prepared the statement for him. Finnegan further testified that Miller had coerced him into signing the false statement by threatening to fire Finnegan if he did not sign the statement, and by promising him the reward of a better paying job with Roadway Express if he did sign the statement. The jury acquitted plaintiff of all criminal charges stemming from the June 26, 1996 incident.

On February 19, 1997, plaintiff commenced the instant civil action, alleging claims for defamation, malicious prosecution, false imprisonment, wrongful discharge, and civil conspiracy against the Roadway defendants and the East Coast defendants. Following defendants' preliminary objections, plaintiff filed an amended complaint. Defendants again filed preliminary objections in the nature of a demurrer, and on November 27, 1997, this court sustained the objections and dismissed plaintiff's case with prejudice.

Plaintiff appealed the November 27, 1997 order, and the Superior Court affirmed this court's dismissal of plaintiff's counts for defamation, false imprisonment, wrongful discharge, and civil conspiracy, but reversed the dismissal of the malicious prosecution count, holding that plaintiff's pleadings were sufficient at that stage to defeat defendants' demurrer. The Superior Court noted that this court's dismissal of the malicious prosecution

count was premised on a determination that the defendants did not institute the criminal proceedings against plaintiff, but rather merely reported the incident to Officer Storm. Citing *Hess v. County of Lancaster,* 100 Pa. Commw. 316, 514 A.2d 681 (1986), the Superior Court distinguished between a situation where a person gives accusatory information that he honestly believes to be correct, from that where a person gives information to the authorities that he knows to be false. The Superior Court held that when a person knowingly gives false accusatory information to the police, that person is deemed to have initiated the proceedings against the accused, because even if the accuser takes no further action, the police officer's ability to intelligently and independently exercise discretion is made impossible. The Superior Court pointed to the pleadings in plaintiff's amended complaint averring that Slavin, Smedley, and Miller knew that the statements to Officer Storm were false, and the court held that the pleadings were sufficient to overcome defendants' demurrer that they did not institute the criminal proceedings against plaintiff.

Following the Superior Court's remand, the parties engaged in discovery including the sworn depositions of plaintiff and Finnegan. In his deposition taken on December 3, 1999, Finnegan states that he did not see plaintiff climb over a barrel into Miller's office, and that he did not see plaintiff covered with ink shortly thereafter. Finnegan asserts that when Miller first asked him to support Miller's allegedly fabricated story concerning plaintiff's actions on June 26, 1996, he vehemently objected, and told Miller that he thought that it was wrong because it was not true, and that he had not seen the things

that Miller wanted him to allege. Finnegan also relates that Miller hates black people, and that Miller was motivated to fabricate evidence against plaintiff, who is an African-American, because of Miller's racial bias. Finnegan quotes Miller as telling him that he "hates f***ing niggers," and that Miller told Finnegan that he was going to use plaintiff as a scapegoat to discourage theft from the Roadway Express facility. Finnegan asserts that he did not sign his notarized statement in front of a notary, and that he never witnessed it being notarized. Finnegan admits, however, that he never told Slavin or Smedley that his statement concerning plaintiff was false.

In his deposition taken on October 22, 1999, plaintiff confirms that Slavin found him in Miller's office with the air bag on the morning of June 26, 1996, but he denies breaking into Miller's office, and denies stealing the parcel of dresses. Plaintiff asserts that the publicity and notoriety created by his criminal trial for the events on June 26, 1996 have caused great damage to his reputation, and has interfered with his business relations and his marriage. Plaintiff states that he does not know that Smedley had a reason to think that another person other than plaintiff took the dresses. Plaintiff also states his belief that the aggressive stance by Smedley and Slavin against the theft was motivated by a desire to discourage theft in general at the Roadway Express facility, and not by any personal animosity against him.

On April 11, 2000, the Roadway defendants filed a motion for summary judgment, and on May 5, 2000, the East Coast defendants also filed a motion for summary judgment. This court heard oral argument on both of the

motions on June 5, 2000, and following a review of the parties' briefs and the relevant Pennsylvania law, we are now ready to dispose of this matter.

The standards of review for summary judgment are well established in Pennsylvania law. Pa.R.C.P. 1035.2(2) provides that a party may move for summary judgment:

"[I]f, after the completion of discovery relevant to the motion . . . an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury."

When deciding upon a motion for summary judgment, the record must be viewed in a light most favorable to the non-moving party and summary judgment may only be entered in cases where the right is clear and free from doubt. *Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 608 A.2d 1040 (1992). A court determining a motion for summary judgment is required to accept as true all well-pleaded facts in the non-moving party's pleadings, and must give the non-moving party the benefit of all reasonable inferences deducible therefrom. *Spirer v. Freeland & Kronz,* 434 Pa. Super. 341, 344, 643 A.2d 673, 675 (1994), *allocatur denied,* 543 Pa. 730, 673 A.2d 336 (1996). A party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Drapeau v. Joy Technologies Inc.,* 447 Pa. Super. 560, 564, 670 A.2d 165, 167 (1996), *allocatur denied,* 546 Pa. 644, 683 A.2d 883 (1996). To defeat a motion for summary judgment, under Pa.R.C.P. 1035.3(a)(2) the opposing party:

"[M]ay not rest upon the mere allegations or denials of the pleadings but must file a response within 30 days

after service of the motion identifying . . . evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced." Pa.R.C.P. 1035.3(a)(2).

Furthermore, the Pennsylvania Rules of Civil Procedure specifically limit what may be considered as evidence when determining whether a motion for summary judgment should be granted. Only evidence that is "in the record" may be considered. *Scopel v. Donegal Mutual Insurance Co.*, 698 A.2d 602, 606 (Pa. Super. 1997). Pa.R.C.P. 1035.1 defines the record for purposes of summary judgment as including:

"(1) pleadings;

"(2) depositions, answers to interrogatories, admissions and affidavits, and;

"(3) reports signed by an expert witness that would, if filed, comply with Rule 4003.5(a)(1), whether or not the reports have been produced in response to interrogatories." Pa.R.C.P. 1035.1.

It is well established in Pennsylvania law that litigant's briefs, and any attachments made thereto, are not part of the official record, and thus may not be considered as evidence in the record by a court determining a motion for summary judgment. *Scopel,* 698 A.2d at 606; *Wheeler v. Johns-Manville Corp.,* 342 Pa. Super. 473, 477, 493 A.2d 120, 122 (1985); *Irrera v. SEPTA,* 231 Pa. Super. 508, 514, 331 A.2d 705, 707 (1974); *P.P.&J. Inc. v. Leupold,* 30 D.&C.4th 410, 416 (1996). Furthermore, before depositions may be considered as evidence for purposes of summary judgment, they must be properly filed and made a part of the official record. *Scopel,* 698 A.2d at 604.

Under *Scopel, Wheeler,* and *Irrera, supra,* and Pa.R.C.P. 1035.1, in the instant case the only items of evidence that may properly be considered by this court are the pleadings contained in plaintiff's amended complaint, the attachments to plaintiff's amended complaint, the sworn depositions of plaintiff and James Finnegan, and the exhibits attached to the depositions of plaintiff and James Finnegan that were made a part of the record by reference during the taking of the two depositions. The court may not consider either the appendix to plaintiff's brief I or the appendix to plaintiff's brief II, nor may the court consider exhibits 1 through 6 as attached to the appendix to brief of defendants Roadway Express Inc., Mark Slavin and Thomas Smedley in support of their motion for summary judgment. Taking all well pleaded facts *in the record* in the light most favorable to plaintiff, as we are constrained to do when determining a motion for summary judgment, we conclude that the Roadway defendants' motion for summary judgment should be granted, and that the East Coast defendants' motion for summary judgment must be denied.

The Pennsylvania courts have adopted Restatement (Second) of Torts §653 for the tort of malicious prosecution, and have held that this tort requires a plaintiff to prove three elements: (1) defendant instituted proceedings against plaintiff without probable cause; (2) with malice, and; (3) the proceedings were terminated in plaintiff's favor. *Strickland v. University of Scranton,* 700 A.2d 979, 984 (Pa. Super. 1997); *Cosmas v. Bloomingdales Brothers Inc.,* 442 Pa. Super. 476, 481, 660 A.2d 83, 85 (1995); *Amicone v. Shoaf,* 423 Pa. Super. 281, 620 A.2d 1222 (1993); *Cibrone v. Stover,* 351

Pa. Super. 250, 505 A.2d 625, 627 (1986); *Jaindl v. Mohr,* 432 Pa. Super. 220, 637 A.2d 1353, 1357 (1994). In the instant case, it is undisputed that the criminal proceedings against plaintiff for the events on June 26, 1996 were terminated in plaintiff's favor, with a jury acquitting plaintiff of all charges. Thus our inquiry is focused upon whether or not the defendants instituted the proceedings against plaintiff without probable cause.

For the Roadway defendants, our inquiry proceeds no further than the initiation element of the malicious prosecution analysis, because we hold that the evidence is insufficient as a matter of law to establish that the Roadway defendants instituted the proceedings against plaintiff. As the Superior Court held in its opinion underlying this remanded proceeding, the principle embodied in the initiation requirement for malicious prosecution allows people to honestly report suspected criminal activity without fear of reprisal, so long as it is left entirely up to the official's independent discretion whether or not further investigation or charges against the accused are warranted. See also, *Hess,* 100 Pa. Commw. at 321, 514 A.2d at 683, quoting Restatement (Second) of Torts §653, comment g. Accordingly, our determination of the initiated element in the instant case requires a determination of whether the defendants merely provided honest information to Officer Storm, or pressured the officer to initiate charges against plaintiff, thereby making it impossible for Officer Storm to exercise an intelligent and independent discretion.

Even taking the facts in the record in the light most favorable to plaintiff, there is no evidence that Slavin or Smedley ever knew of the alleged efforts by Miller to

fabricate evidence against plaintiff, or that Slavin and Smedley had any reason to know that Finnegan's notarized statement may have been the product of Miller's coercive threats. The record only indicates that Slavin and Smedley merely reported to Officer Storm what Slavin had observed on June 26, 1996, and then let the officer decide independently how to proceed against plaintiff. Finnegan relates that Slavin was present when Finnegan finally signed the statement allegedly prepared for Finnegan by Miller, yet Finnegan states that Slavin did not know the statement was false at that time. Although Finnegan claims that he overheard Slavin agreeing with Miller that they would use plaintiff as a scapegoat to discourage theft, there is no evidence that Slavin or Smedley ever took any action to pressure Officer Storm or influence Officer Storm's discretion. Finally, even if Slavin and Smedley approved of having Finnegan sign the allegedly false statement, there is no evidence that they had any reason to doubt the truth of what Miller had told them concerning plaintiff's conduct.

Under *Hess,* merely giving an official information or even an accusation of criminal misconduct is not enough to give rise to the tort of malicious prosecution, so long as the discretion to proceed against the accused is left entirely up to the official. *Id.,* 100 Pa. Commw. at 321, 514 A.2d at 683. This aptly describes the conduct of Slavin and Smedley concerning the events on June 26, 1996. We hold that as a matter of law, the actions of Slavin and Smedley are insufficient to constitute an institution of the criminal proceedings against plaintiff, and thus we grant summary judgment for Slavin and Smedley, and dismiss them from this case. Because we hold that

an action for malicious prosecution may not be maintained against Slavin or Smedley, we must also grant summary judgment for Roadway Express Inc. Plaintiff's theory of liability against Roadway Express Inc. is premised on the assertion that Slavin and Smedley are agents of Roadway Express, thus plaintiff asserts that Roadway Express is liable as the principal for all actions taken by Slavin and Smedley in the performance of their duties as agents for Roadway Express. Plaintiff's claim against Roadway Express is dependent upon a finding of tortious conduct by its agents, so our holding that the conduct of Slavin and Smedley may not give rise to an action for malicious prosecution also negates plaintiff's claim against Roadway Express Inc. Accordingly, we grant summary judgment for Roadway Express Inc.

Conversely, for the East Coast defendants, there is enough evidence in the record indicating that Miller knowingly fabricated accusatory evidence against plaintiff, and that Miller pushed this allegedly falsified evidence to Officer Storm in an attempt to ensure that criminal proceedings were undertaken against plaintiff. In his deposition, Finnegan states that despite his repeated objections, Miller insisted on using threats to coerce Finnegan to help produce fabricated accusatory evidence against plaintiff, and that Miller provided this allegedly falsified information to Officer Storm, Slavin, and Smedley. In *Hess,* our Superior Court explained that when a person knowingly gives false accusatory information to an official, "an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information." *Id.,* 100 Pa. Commw. at 321, 514 A.2d at 683,

quoting Restatement (Second) of Torts §653, comment g. We hold that the evidence in the record, when taken in the light most favorable to plaintiff, is sufficient to establish that Miller initiated the criminal proceedings against plaintiff, by virtue of having knowingly provided false accusatory information to Officer Storm.

In their brief in support of their motion for summary judgment, the East Coast defendants point to the existence of probable cause as an absolute defense to an action for malicious prosecution, and they assert that Miller had probable cause to initiate the criminal proceedings against plaintiff. The East Coast defendants are correct that the existence of probable cause constitutes an absolute defense to a claim for malicious prosecution. *Cosmas,* 442 Pa. Super. at 482, 660 A.2d at 86. In the context of the tort of malicious prosecution, the Pennsylvania courts have defined probable cause as "a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense." *Cosmas,* 442 Pa. Super. at 482, 660 A.2d at 86; *Amicone,* 423 Pa. Super. at 286, 620 A.2d at 1224; *Strickland,* 700 A.2d at 984. (citations omitted) Further, "[t]he existence of probable cause is usually a question of law for the court to decide, but the issue may be submitted to the jury when the facts material to the issue of probable cause are in controversy." *Amicone,* 423 Pa. Super. at 286, 620 A.2d at 1224. (citations omitted)

In the instant case, the evidence in the record indicates that the Roadway Express facility had been experiencing ongoing problems with theft. Plaintiff, who had access to valuable packages being shipped by Roadway

Express, was found in Miller's office with a parcel of dresses in an air bag being used for trash collection. Under these facts, we agree with the East Coast defendants that there was sufficient probable cause that plaintiff committed a theft to warrant reporting the incident to the police. Nonetheless, our inquiry does not end there, because plaintiff was also charged with criminal trespass. The evidence in the record indicates that plaintiff was charged with criminal trespass as a direct result of Miller's alleged fabrication of evidence. On June 26, 1996, the date of the incident, Officer Storm informed plaintiff that he was only planning to charge plaintiff with theft and receiving stolen property, and charges for those two offenses were filed against plaintiff on July 2, 1996. Officer Storm did not file the charge for criminal trespass against plaintiff until July 26, 1996, and the narrative portion of his criminal arrest report indicates that the officer only filed the additional charge of criminal trespass *after* he had received the statements from Miller and Finnegan. Had Miller merely honestly reported what Slavin had seen to Officer Storm concerning the alleged theft situation, then the probable cause defense may have been applicable. In light of facts against Miller asserted in Finnegan's deposition, however, we must apply the probable cause analysis to the charge against plaintiff for criminal trespass.

The crime of criminal trespass is defined in 18 Pa.C.S. §3503(a)(1)(ii), which provides: "[a] person commits an offense if, knowing that he is not licensed or privileged to do so, he breaks into any building or occupied structure or separately secured or occupied portion thereof." 18 Pa.C.S. §3503(a)(1)(ii). Taking the evidence in the

light most favorable to plaintiff, the record indicates that Miller had no grounds whatsoever on which to base a reasonable suspicion that plaintiff had committed criminal trespass. According to Finnegan's deposition, he never saw plaintiff climbing onto a barrel to break into Miller's office, as Finnegan's notarized statement claimed. Finnegan has testified that Miller completely fabricated the information asserted in Finnegan's notarized statement, and Miller forced Finnegan to support Miller's story by threatening to terminate Finnegan's employment.

In light of *Hess, supra,* and the Superior Court's opinion underlying this remanded proceeding, the probable cause defense is inapplicable to the criminal trespass charge against plaintiff. When the accusatory information at issue is entirely the product of a knowing and deliberate falsehood, there is inherently a lack of probable cause relating to accusations. It stands to reason that there can be no reasonable suspicion when the suspicion is knowingly created from an entirely fabricated story. To grant the summary judgment to the East Coast defendants under the facts of this case would be to approve of the use of knowingly false information to add additional criminal charges against one already accused of criminal conduct. This we decline to do. We hold that as a matter of law, taking the facts in the light most favorable to plaintiff, the evidence in the record is sufficient to establish that Miller, without probable cause, instituted the proceedings against plaintiff for criminal trespass.

The second element required for malicious prosecution is that the accuser's accusations must have been made "with malice." *Strickland,* 700 A.2d at 984. Our Supreme

Court has recognized that "[l]egal malice is not limited to motives of hatred or ill will, but may consist of defendant's reckless and oppressive disregard of plaintiff's rights." *Hugee v. Pennsylvania Railroad Co.,* 376 Pa. 286, 291, 101 A.2d 740, 743 (1954). (citations omitted) Furthermore, the existence of malice can be inferred from the absence of probable cause. *Amicone,* 423 Pa. Super. at 285-86, 620 A.2d at 1224; *Hugee,* 376 Pa. at 291, 101 A.2d at 743. Accordingly, in the instant case the malice element against Miller is satisfied by our holding that Miller lacked probable cause to provide knowingly fabricated evidence to Officer Storm. Our conclusion is further supported by Finnegan's assertions that Miller's conduct was motivated by a severe racial prejudice towards all African-Americans, including plaintiff. We hold that there is sufficient evidence in the record to allow a jury to find that Miller acted with the requisite malice when she initiated the criminal proceedings against plaintiff.

Thus, we hold that plaintiff has met his burden of pointing to the existence of evidence in the record indicating his ability to prove each of the required elements to maintain an action for malicious prosecution against Miller, thus we deny Miller's motion for summary judgment.

In addition, the evidence in the record indicates plaintiff's ability to prove liability for malicious prosecution against defendant East Coast Janitorial, because the record indicates that when Miller embarked on her course of fabricating evidence against plaintiff, Miller was both in the employment of East Coast Janitorial, and was working within the scope of her employment as an agent of East Coast Janitorial. The conditions under

which a business entity may be liable for the acts of its employees have been set forth at length in *Butler v. Flo-Ron Vending Co.,* where our Superior Court instructed that:

"A master is liable for the acts of his servant which are committed during the course of and within the scope of the servant's employment . . . [t]his liability of the employer may extend even to intentional or criminal acts committed by the servant." *Butler v. Flo-Ron Vending Co.,* 383 Pa. Super. 633, 646, 557 A.2d 730, 736 (1989), *allocatur denied,* 523 Pa. 646, 567 A.2d 650 (1989).

The *Butler* court also noted that "[w]hether a person acted within the scope of employment is ordinarily a question for the jury." *Id.* at 646, 557 A.2d at 736. (citation omitted) In the instant case, there is no dispute that Miller was plaintiff's direct supervisor at East Coast Janitorial, and the record indicates that Miller's alleged fabrication of evidence was performed as a means to facilitate discipline against an employee working for East Coast Janitorial under Miller's supervision. We hold that these facts could allow a jury to find that Miller was working within the scope of her employment for East Coast Janitorial when she allegedly fabricated the evidence against plaintiff. Accordingly, we find that the evidence in the record may be sufficient for a jury to impose liability on East Coast Janitorial for Miller's conduct, and thus we deny summary judgment for East Coast Janitorial.

We find no merit in the East Coast defendants' assertion that plaintiff's action may not be maintained because plaintiff has not pled any specific monetary or emotional distress damages. Defendants are correct that our Supe-

rior Court has held that "a plaintiff pleading the existence of emotional [damages] must substantiate that he actually suffered the claimed distress with expert medical confirmation." *Hunger v. Grand Central Sanitation,* 447 Pa. Super. 575, 584, 670 A.2d 173, 177 (1996). (citations omitted) Defendants are also correct in their assertions that plaintiff has not named an expert medical witness who will substantiate plaintiff's damages claim, and that plaintiff has not pled the existence of actual monetary damages.

Nonetheless, our Superior Court has held that medical testimony is not required to establish emotional damages in an action for malicious prosecution. *Wecht v. PG Publishing Co.,* 725 A.2d 788, 790 (Pa. Super. 1999), citing *Shelton v. Evans,* 292 Pa. Super. 228, 437 A.2d 18 (1981). In *Shelton,* the court held that "in an action for malicious prosecution, compensatory damages may include all of the plaintiff's actual expenses in defending himself, compensation for loss of liberty or time, harm to reputation, physical discomfort, interruption of business, mental anguish, humiliation, and injury to feelings." *Id.* at 233, 437 A.2d at 21. (citations omitted) The *Wecht* court recognized that the types of intangible injuries suffered by a victim of malicious prosecution may be so obvious that no expert medical confirmation is required. *Wecht,* 725 A.2d at 790. In the instant case, the evidence contained in plaintiff's deposition indicates he may be able to prove that the criminal proceedings at issue have caused him to suffer great mental anguish and a loss of reputation, along with suffering interference with his daily business relations and repercussions affecting his marriage. Under *Shelton* and *Wecht, supra,* we are not

persuaded by the East Coast defendants' assertion that they are entitled to summary judgment solely on the issue of damages.

Finally, we do not agree with defendants' assertion at oral argument that they are entitled to summary judgment due to the procedural defects in plaintiff's response to their motions for summary judgment. Defendants are correct that plaintiff's response was not filed in accordance with Rule 211 of the Monroe County Local Rules of Civil Procedure, because the response was not filed more than five days prior to the date of oral argument. A violation of Rule 211 of the Monroe County Local Rules of Civil Procedure constitutes a default that allows a court to grant or deny the relief at issue, however it is a discretionary decision for the court, not a mandatory one. In the instant case, plaintiff's response to the motions for summary judgment was filed within the 30 days specified by Pa.R.C.P. 1035.3(a), and defendants have failed to show how plaintiff's failure to comply with local Rule 211 has caused any prejudice to their case. We decline to enter summary judgment on behalf of the East Coast defendants solely on the issue of plaintiff's failure to comply with local Rule 211.

## ORDER

And now, July 26, 2000, summary judgment is granted for Roadway Express Inc., Mark Slavin, and Thomas Smedley. The motion of East Coast Janitorial and Carrie Miller for summary judgment is denied.