557 A.2d 730

Gibson BUTLER, Appellant,

v.

**FLO–RON VENDING COMPANY and Milton Friedberg and
Estelle Friedberg and Lee Friedberg and Barry
Friedberg, Appellees.**

Gibson BUTLER, Appellee,

v.

**FLO–RON VENDING COMPANY and Milton Friedberg and
Estelle Friedberg and Lee Friedberg and Barry
Friedberg, Appellants.**

Superior Court of Pennsylvania.

Argued May 26, 1988.

Filed March 30, 1989.

634

636

William A. Habib, Bala Cynwyd, for appellant in No. 3200 and appellee in No. 3252.

Simon J. Rosen, Philadelphia, for appellees in No. 3200 and appellants in No. 3252.

Before BROSKY, ROWLEY and McEWEN, JJ.

ROWLEY, Judge:

These cross-appeals by all the parties are from a judgment entered on a jury verdict in favor of the plaintiff, Gibson Butler (Butler), in an action against Flo-Ron Vending Co., Inc. (Flo-Ron), Milton Friedberg, Estelle Friedberg,[1] Lee Friedberg and Barry Friedberg, to recover compensatory and punitive damages for: (1) intentional infliction of emotional distress; (2) defamation; (3) invasion of privacy; (4) malicious prosecution; (5) malicious abuse of process; (6) injurious falsehood; and (7) false imprisonment.

The facts giving rise to this action are as follows. On April 20, 1981, it was discovered that the offices of Flo-Ron, Butler's employer, had been burglarized. Approximately one week later, Butler received a job offer from AVM Vending Company (AVM), and gave Flo-Ron two weeks' notice. Milton Friedberg, the owner of Flo-Ron, suspected Butler of complicity in the burglary and hired a "trouble shooter in the neighborhood" to try to recover from Butler some of the personal jewelry which had been taken during the burglary. Butler was followed by the "troubleshooter" for approximately one month and received from him numerous threats to his life and that of his girlfriend.

Milton Friedberg also asked Butler to submit to questioning by the police. While Butler was being questioned by the police, defendants Barry and Lee Friedberg, who were the sons of Milton Friedberg and employees of Flo-Ron[2], with the assistance of their secretary, Ann Marie Cusack McDowell (McDowell), searched the van that had been provided by Flo-Ron to Butler for use in his employment.

1. By stipulation of the parties, all claims asserted against Estelle Friedberg were discontinued prior to trial.

2. Despite Butler's assertion in his brief at p. 13 that the evidence presented at trial established that Lee and Barry Friedberg were and are *officers* of Flo-Ron, Butler did not indicate where in the record evidence of this fact appears, and our review of the record discloses no such evidence. The only evidence presented at trial concerning the relationship of Milton, Lee, and Barry Friedberg to Flo-Ron established that Milton was the owner of Flo-Ron, and Barry and Lee were *employees* who had some supervisory powers.

The search was conducted by Barry Friedberg handing boxes from the van to McDowell who then inspected the contents of the boxes for "anything that looked like it didn't belong there." In one of the boxes, McDowell found a small gold ring which was identified by the Friedbergs as one which had been stolen from the Flo–Ron office. Butler was subsequently arrested, charged with receiving stolen property (the ring), and fired from his employment with Flo–Ron by Barry Friedberg. Following Butler's arrest, Lee Friedberg contacted Joseph Valerio, Jr., then the Vice President of AVM Vending Company, and informed him of the criminal charge filed against Butler. As a result of Friedberg's communication, AVM withdrew its previous offer of employment to Butler.

On June 8, 1981, approximately four days following Butler's preliminary hearing on the criminal charges, Barry and Lee Friedberg told McDowell that they put the ring inside a box that was in Butler's van because they felt that he was guilty of the burglary. McDowell reported this conversation to the police in September of 1981. Consequently, the charges against Butler were nol prossed in January of 1982.

Butler commenced the present action in April 1982. A jury trial resulted in a verdict in favor of Butler in the amount of $41,545 compensatory damages against all defendants, and in the amount of $10,000 and $5,000 punitive damages against Lee and Barry Friedberg, respectively. Butler filed a petition for delay damages which was denied, and all parties filed post-verdict motions requesting a new trial which were also denied. These cross-appeals from the judgment entered on the verdict followed.

In the appeal at No. 3252 Philadelphia 1987, defendants Milton, Barry, and Lee Friedberg, as well as Flo–Ron, request a new trial on liability on two related bases. First, they assert that the trial court[3] erred in permitting Butler

3. Two different trial court judges were involved in this case. Judge Julian King made all pre-trial determinations and presided at trial. However, before post-verdict motions were ruled upon, Judge Sandra Mazer Moss was assigned to the case. Therefore the claims of error committed at the trial are allegations that Judge King erred, while the

to introduce evidence of his character by means of his military record. Secondly, they argue that the first error was compounded when the trial court refused to permit the defendants to impeach Butler by means of a) specific bad acts collateral to the issues in the case, i.e., whether he had been fired by prior employers for stealing and whether or not he had sold stolen property in the past, and b) evidence directly contradicting Butler's assertions that he had been continuously employed. In addition, defendant Flo–Ron requests a new trial on the basis that there was insufficient evidence to establish the corporation's liability for compensatory damages for the actions of any of the individual defendants, and on the basis that the verdict against the corporation for compensatory damages was against the weight of the evidence.

Butler, in his appeal at No. 3200 Philadelphia 1987, also argues that we should grant a new trial, but he argues that the new trial should be limited to the issue of damages. The bases of his request for a new trial limited to damages are that 1) the amount of the compensatory damages is inadequate; 2) the amount of the punitive damages is inadequate; 3) the punitive damages should have been assessed against Flo–Ron as well as Lee and Barry Friedberg individually; 4) the trial court limited Butler's opening argument to the jury; and 5) the trial court should have granted a mistrial or given a cautionary instruction when reference was made to a polygraph examination. Butler also argues that Pa.R.C.P. 238 regarding delay damages is applicable to the present case because the injuries to his reputation and ability to pursue employment were bodily injuries and property damage respectively.

For the reasons set forth below, we affirm the judgment.

APPEAL AT NO. 3252 PHILADELPHIA 1987

■ The defendants first argue that the trial court erred in permitting Butler to present evidence of his good military record because it was evidence of good character, and such

allegations concerning disposition of all post-trial motions are addressed to the rulings of Judge Moss.

evidence is inadmissible unless one's good character has been attacked. We agree, but find the error to have been harmless.

In *Greenberg v. Aetna Insurance Co.*, 427 Pa. 494, 235 A.2d 582 (1967), which involved a claim by an insured to recover fire loss damages payable under fire insurance policies issued to the insured, the Court remanded the case for a new trial because the jury had been improperly charged. Because the case was going to be retried, the Court also addressed the question of whether the trial court had erred in admitting evidence of the plaintiff's military record. The Court re-stated the well-established rule that "in civil actions evidence of good character or reputation 'is inadmissible unless directly in issue or involved in the nature of the proceedings, and even then evidence of good character is not admissible unless and until it is attacked by evidence to the contrary.'" *Id.*, 427 Pa. at 498, 235 A.2d at 584. Moreover, the Court noted that for a party's character to be an issue within the meaning of this rule, his or her "character must be of particular importance and therefore a material fact in the case." *Id.* The Court concluded that Greenberg's character was not in issue, and therefore on remand, evidence of his good military record should not be admitted.

Since its decision in *Greenberg*, the Supreme Court has continued to reiterate the rule regarding evidence of good character applied in *Greenberg*. *Hepps v. Philadelphia Newspapers, Inc.*, 506 Pa. 304, 312, n. 1, 485 A.2d 374, 379, n. 1 (1984). In consideration of the continuing viability of the rule set forth in *Greenberg*, and in light of the failure of either the trial court or Butler to distinguish *Greenberg* from the present case, we find that *Greenberg* is applicable to the case before us.

The record certified to us in the present case does not disclose that Butler's character was placed in issue. Furthermore, at the time that evidence of his military record was introduced, his good character had not been attacked. Therefore, it was error to permit Butler to admit evidence

of his military record. However, because there was other evidence of the defendants' liability [4], such as McDowell's unimpeached and uncontradicted testimony that Lee and Barry Friedberg planted the ring in Butler's truck, and the unofficial surveillance of Butler performed at the direction of Milton Friedberg, we find no prejudice to the defendants that warrant a new trial. *Shaffer v. Torrens*, 359 Pa. 187, 58 A.2d 439 (1948).

The defendants also argue that the trial court compounded its error in permitting Butler to testify concerning his military record when it refused to permit the defendants to impeach Butler by presenting 1) evidence that Butler had not been continuously employed as he had testified, and 2) evidence of specific bad acts such as his having been fired from previous jobs for stealing and his having sold stolen goods.

█ As to the first of these two arguments we find no merit because the defendants never offered at trial to present evidence which would contradict Butler's testimony that he had been continuously employed, and they were not precluded from presenting such evidence. The defendants only offered to rebut Butler's assertion that he had been continuously employed by evidence that he had been fired from previous jobs. Such evidence does not establish that Butler was not continuously employed because even if Butler had previously been fired from other jobs, he may have immediately found new work, and thereby have been continuously employed. The trial court expressly permitted the defendants to "put some witness on to say I know for a fact that he didn't work from such a time to such a time." Thus, we conclude that the defendants were not barred from presenting evidence that Butler was not continuously employed.

**4.** Neither the original record certified to us nor the reproduced record includes the court's instructions to the jury, any indication of which counts were submitted to the jury, and any specific conclusions of the jury. We therefore presume that all of plaintiff's claimed causes of actions were submitted to the jury.

■ The defendants' argument that the trial court erroneously prevented them from impeaching Butler by presenting evidence that he had been fired from previous jobs for stealing and that he had sold stolen goods is equally without merit. The defendants have cited no appellate authority to support their argument that one's good character can be impeached by evidence of specific bad acts, and in fact, the law is to the contrary.[5]

■ Character can be proven by evidence of specific bad acts, by a witness's opinion of a person's character, or by testimony of a person's general reputation in the community. *McCormick on Evidence,* 3rd Ed., § 186. Traditionally, however, the preferred method, where evidence of character is admissible, is through evidence of reputation. *Id.* In Pennsylvania, it is well established that with only one exception, evidence of specific bad acts may not be introduced in a civil case to impeach a witness. *Berliner v. Schoenberg,* 117 Pa.Super. 254, 178 A. 330 (1935).

*Berliner* involved execution proceedings, and the issue at trial was who had title to certain property. The appellant had attempted at trial to establish her ownership of the property by her own testimony and that of her husband. The appellee was permitted to present evidence that the husband, in an unrelated Orphans' Court proceeding, had come into court with unclean hands. One of the reasons this evidence was admitted into evidence was to show a particular instance of misconduct from which the jury could infer that the appellant and her husband were not credible. In finding that this evidence of a collateral specific bad act should not have been admitted to impeach the husband's credibility, the Court stated:

5. Although the defendants assert with regard to this argument that Butler's "character was put in issue" once the trial court erroneously permitted Butler to testify concerning his good military record, we find it unnecessary to decide whether or not Butler's character in fact was put in issue, as defined in *Greenberg, supra,* solely as a result of evidence of his good character being improperly introduced. See *Carlson Mining Co. v. Titan Coal Co.,* 343 Pa.Super. 364, 494 A.2d 1127 (1985).

[W]e believe it to be equally well settled in Pennsylvania that a witness, subject to an exception hereafter referred to, may not be impeached by showing particular instances of misconduct disconnected with and collateral to the issue being tried, whether disclosed by cross-examination or extrinsic proofs.... It has long been the rule in Pennsylvania ... that a witness may not even be cross-examined as to such former acts of misconduct. (*Stout v. Rassel,* 2 Yeates, 334; *Elliott v. Boyles,* 31 Pa. 65; *Commonwealth v. Williams,* 209 Pa. 529, 58 A. 922; *Commonwealth v. Payne,* 205 Pa. 101, 54 A. 489; *Marshall v. Carr,* 271 Pa. 271, 114 A. 500). Perhaps the witness here should be placed in the category of a party rather than a witness for a party, but even so, his credibility may not be impeached by evidence involving collateral matters.... 'A witness may be interrogated as to his conviction of such an offense as affects his credibility. *Commonwealth v. Racco,* 225 Pa. 113 [73 A. 1067, 133 Am.St.Rep. 872]. But it is not proper practice to ask him as to his guilt of some alleged crime not connected with the case on trial, and for which he was never convicted....'

*Berliner, Id.,* 117 Pa.Super. at 260–261, 178 A. at 332. (See *Carlson Mining Co. v. Titan Coal Co.,* 343 Pa.Super. 364, 494 A.2d 1127 (1985) for a more recent application of the prior conviction exception in a civil action.)

In the present case, the defendants sought to impeach the general credibility of Butler by evidence that he had been fired from previous jobs for theft and that he had sold stolen goods. Whether or not Butler had in fact previously been fired for theft or had sold stolen goods was collateral to the issues in the present case. There also was no suggestion that Butler had ever been convicted of theft or selling stolen goods. Therefore, the trial court properly refused to permit defendants to present evidence of alleged specific bad acts of Butler which were irrelevant to the present case and of which Butler had never been convicted.

■ Although the defendants argue that failure to allow rebuttal testimony constitutes reversible error, the cases relied upon by them to support this assertion are factually distinguishable from the present case. The defendants rely on *Ransom v. City of Philadelphia,* 129 Pa.Super. 351, 195 A. 922 (1938) and *Foster v. McKeesport Hospital,* 260 Pa.Super. 485, 394 A.2d 1031 (1978) to support their argument. In *Ransom,* the rebuttal testimony which was erroneously precluded was testimony of a witness which would have contradicted specific statements made by a prior witness. Similarly, in *Foster,* the court held that it was proper to allow rebuttal *only* if it refuted evidence which had been offered by the opposing party. In the present case, no evidence was admitted through the testimony of Butler or any other witness that Butler had never been fired for stealing previously or that Butler had never sold stolen goods. Therefore, under both *Ransom* and *Foster,* the evidence which defendants wanted to introduce showing that Butler had previously been fired for theft and that he had sold stolen goods would not have been admissible.

■ Finally, in this appeal, Flo–Ron alone argues that it is entitled to a new trial on the basis that the verdict against it is against the weight of the evidence.[6] The standards for granting a request for a new trial on the basis that the verdict is against the weight of the evidence are well established.

6. Flo–Ron also purports to argue that it should be granted a new trial because the evidence was *insufficient* to support the verdict against it in the absence of any evidence establishing that the individual defendants were acting on behalf of the corporation. Flo–Ron has cited no authority, and we have found none, which authorizes the remedy of a new trial where the evidence is found to be insufficient. On the contrary, where the evidence is insufficient, the remedy which is granted in civil cases is a judgment notwithstanding the verdict. See e.g., *Kuhler v. Harrison Construction Co.,* 361 Pa. 100, 62 A.2d 853 (1949); *Mike v. Borough of Aliquippa,* 279 Pa.Super. 382, 421 A.2d 251 (1980); *Fitzgerald v. McCutcheon,* 270 Pa.Super. 102, 410 A.2d 1270 (1979). Flo–Ron has not requested on appeal a judgment n.o.v., nor did Flo–Ron file any post-trial motion for judgment n.o.v. However, even if we were to apply the appropriate scope of review of an order denying a motion for judgment n.o.v., see *Fitzgerald, supra,* we would find the evidence sufficient to support the verdict against Flo–Ron.

"The grant of a new trial is within the sound discretion of the trial judge, who is present at the offering of all relevant testimony, but that discretion is not absolute; this Court will review the action of the court below and will reverse if it determines that it acted capriciously or palpably abused its discretion." *Austin v. Ridge*, 435 Pa. 1, 4, 255 A.2d 123, 124, (1969) and cases there cited. "A new trial should not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion: [citation omitted]. Neither should it ordinarily be granted on the ground that the verdict was against the weight of the evidence where the evidence is conflicting and the jury might have found for either party." *Carroll v. City of Pittsburgh*, 368 Pa. 436, 445–446, 84 A.2d 505, 509 (1951). A new trial should be awarded on the ground that the verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. *Jones v. Williams*, 358 Pa. 559, 564, 58 A.2d 57; *Carroll v. Pittsburgh, supra*, 368 Pa. at 447, 84 A.2d 505; *Brown v. McLean Trucking Co.*, 434 Pa. 427, 429–430, 256 A.2d 606 (1969).

*Burrell v. Philadelphia Electric Company*, 438 Pa. 286, 288–289, 265 A.2d 516, 517–518 (1970).

Flo–Ron argues that corporate liability must be proven, and in the present case, evidence of corporate involvement is "specious" at best. (Flo–Ron's brief, at p. 10.) However, we cannot say that the trial court abused its discretion in denying Flo–Ron's motion for a new trial because there was credible evidence from which the jury could have concluded that the corporation was liable for at least some of the individual defendants' actions. The jury's verdict does not shock our sense of justice nor does it render a new trial imperative.

The conditions under which a corporation may be liable for the acts of its employees have been clearly set forth in

*Fitzgerald v. McCutcheon,* 270 Pa.Super. 102, 106, 410 A.2d 1270, 1271 (1980), where the Court said:

A master is liable for the acts of his servant which are committed during the course of and within the scope of the servant's employment. *Lunn v. Yellow Cab Company,* 403 Pa. 231, 169 A.2d 103 (1961); *Potter Title and Trust Company v. Knox,* 381 Pa. 202, 113 A.2d 549 (1955); Restatement (Second) of Agency § 219. This liability of the employer may extend even to intentional or criminal acts committed by the servant. *Pilipovich v. Pittsburgh Coal Company,* 314 Pa. 585, 172 A. 136 (1934); *McMillen v. Steele,* 275 Pa. 584, 119 A. 721 (1923); Restatement (Second) of Agency § 231. Whether a person acted within the scope of employment is ordinarily a question for the jury. *Orr v. William J. Burns International Detective Agency,* 337 Pa. 587, 12 A.2d 25 (1940); *Straiton v. Rosinsky,* 183 Pa.Super. 545, 133 A.2d 257 (1957).

Conduct within the scope of employment has been defined in the Restatement (Second) of Agency § 228 as:

(1) Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master, and (d) if force is intentionally used by the servant against another, the use of the force is not unexpectable by the master. (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

In the present case, Butler claims that the individual defendants performed a variety of objectionable acts which form the basis of the various counts sued upon in his complaint. To find the corporation liable for compensatory damages, the jury only had to find that *one* of the acts of one of the individual defendants was committed by an individual defendant within the scope of his employment.

Included in the conduct which Butler alleges was improper is that Lee and Barry Friedberg planted in Butler's truck a ring which allegedly had been stolen in the robbery and that they falsely reported to the police that Butler was responsible for the robbery.

The record here clearly supports the finding that the corporation was liable for the planting of the ring in the truck and the false report to the police. Barry and Lee Friedberg were supervisory employees of the corporation, and therefore it was within the nature of their employment that they should cooperate with official authorities in efforts to solve the burglary of the corporation and to provide the authorities with any information or suspicions that they might have. Likewise, it was also within the nature of their employment that they should turn over to the police any potential evidence concerning the burglary. The efforts by Lee and Barry Friedberg to assist in the investigation of the burglary occurred substantially within the time and space limits of their employment. Their efforts also were for the benefit of the corporation because if the police efforts in solving the burglary were successful, the corporation may be able to recover some restitution for the damage to its property. Although the methods used by Lee and Barry Friedberg to cooperate with the police and to "find" evidence of the burglary were improper, there was evidence from which the jury could conclude that their conduct nevertheless was within the scope of their employment.

APPEAL AT NO. 3200 PHILADELPHIA 1987

In his appeal, Butler first argues that he should be granted a new trial limited to damages because the amount of the compensatory and punitive damages is inadequate. Whether to grant a new trial because of the alleged inadequacy of the verdict is a matter within the discretion of the trial court and the trial court's ruling will be sustained on appeal absent a finding of a clear abuse of discretion or error of law which controlled the verdict or outcome of the case. *Stokan v. Turnbull*, 480 Pa. 71, 389 A.2d 90 (1978);

*Krivijanski v. Union Railroad Co.*, 357 Pa.Super. 196, 515 A.2d 933 (1986).

■ Although Butler presented evidence which might support a higher award of compensatory damages, we cannot conclude that the trial court abused its discretion in refusing to grant a new trial where the jury returned a verdict in an amount which would compensate Butler at his claimed rate of pay for at least several years. Similarly, although Butler argues that Lee and Barry Friedberg have not been punished by the awards of punitive damages against them in the amount of $10,000 and $5,000 respectively, Butler has not alleged that the jury was improperly charged with regard to the factors to be considered in determining the amount of punitive damages,[7] and we cannot say that the trial judge abused its discretion in not awarding a new trial on the basis of the inadequacy of the punitive damages.

■ Butler also complains that the corporation should have been liable for punitive damages. Butler asserts that the evidence at trial established that Lee and Barry Friedberg were officers of Flo–Ron, and that telephone calls were placed by Lee Friedberg in which Lee Friedberg advised potential employers of Butler that Butler had been arrested for receiving stolen property. Butler also asserts that the jury found the conduct of Lee and Barry Friedberg *and Flo–Ron* to be outrageous. Based on these facts,[8] Butler argues that the jury should have found the corporation to be liable for punitive damages.

7. Inasmuch as the original record certified to us does not include the charge to the jury, we would be unable to review such a claim even if it had been made.

8. The original record certified to us does not support Butler's assertion of facts. There is no evidence in the record which was before the jury that Lee and Barry Friedberg were *officers* of the corporation. There also is no evidence that the jury found the conduct of Flo–Ron to be outrageous: the record does not show whether the jury was requested to decide whether Flo–Ron's actions were outrageous, and the return of the verdict is not included in the record certified to this court.

Whether to award punitive damages is a question to be resolved by the jury. *Dean Witter Reynolds, Inc. v. Genteel,* 346 Pa.Super. 336, 499 A.2d 637 (1985). The record before us does not contain any jury instructions. Therefore the record does not show that the verdict was contrary to the instructions given to the jury, the record does not show that any objection was made to the jury instructions, and the record does not show that when the jury returned its verdict, any objection was made on the basis that the jury had failed to follow the instructions given to it. In addition, on appeal Butler has not argued that the the jury was improperly charged or that the jury failed to follow the instructions given to it. Because it is the responsibility of the appellant to ensure that the original record certified to this Court contains sufficient information for us to conduct meaningful appellate review, because on the record certified to us it appears that any objection to the jury's decision not to award punitive damages was not timely raised, and because there is nothing in the record before us upon which we could decide whether the jury erred in not awarding punitive damages against Flo–Ron, we hold that this issue has been waived. *Thomas v. Duquesne Light Co.,* 376 Pa.Super. 1, 545 A.2d 289 (1988).

Butler also argues that a new trial limited to damages is necessary because the trial court unfairly limited the time for his counsel's opening argument to the jury and because the court did not grant his request for a mistrial or curative instructions when Milton Friedberg mentioned a polygraph examination, all reference to which had been ordered, prior to trial, to be excluded.[9] We find no merit to either of these issues.

 Although the right to present an opening statement in a civil case is part of a party's constitutional right to be represented by an attorney, and the court may not preclude counsel from making an opening statement to the jury,

9. Because of our disposition of these issues on the merits, it is unnecessary to decide whether the appropriate remedy for either of these alleged errors would be a new trial limited to damages, the only relief sought by Butler.

"there is discretion in the trial court to regulate addresses by counsel to the jury; and so long as no clear abuse of discretion appears and no right of due process has been violated, the court's exercise of discretion will not be reversed." *Speer v. Barry*, 349 Pa.Super. 365, 369, 503 A.2d 409, 411 (1985).

■ In the present case, the trial court advised counsel before the commencement of trial that each party would be permitted twenty minutes for opening argument. During Butler's opening statement, three objections were made by defense counsel. The first one was sustained, but the second two were overruled. Because of the lengthy discussions concerning these objections, the time for presenting his opening statement was substantially diminished. Butler argues that this caused the jury to be unable to understand his view of the case.

Butler does not argue that the first objection was improperly sustained. Therefore, any time required to discuss the objection to it was Butler's counsel's fault for making an inappropriate remark. Although the second two objections to counsel's opening statement were overruled, the trial court erred in overruling the objections because counsel's remarks were attempts to discuss Butler's good character prior to his character being attacked. See *Greenberg, supra*. However, the error in overruling these objections redounded to Butler's benefit because information about his good character was given to the jury at the commencement of the trial. Because both of these second two objections were properly made by defense counsel, any delay caused thereby was also Butler's counsel's fault.

We do not find the trial court's limit of twenty minutes for an opening statement to have been an abuse of discretion. Since Butler's counsel's own improper comments in the opening statement caused the objections thereto and the subsequent discussions, any diminution of the twenty minutes allotted to Butler was not the fault of the trial court but of Butler's own counsel. Consequently, he is not entitled to relief.

■ Butler's argument that the trial court should have granted his request for a mistrial or given a cautionary instruction when Milton Friedberg mentioned the polygraph examination is equally without merit. Butler's motion *in limine* to suppress all testimony concerning a polygraph examination of Butler was granted. However, Milton Friedberg, in an unresponsive answer to a question, mentioned that he had asked Butler to submit to a polygraph examination.

The decision to grant or deny a motion for a mistrial lies in the discretion of the trial court. *Narciso v. Mauch Chunk Township*, 369 Pa. 549, 87 A.2d 233 (1952). We will disturb the trial court's decision only where there has been a clear abuse of discretion as determined by the circumstances under which the objectionable statement was made and in consideration of the steps taken to prevent a prejudicial effect on the jury. *Clark v. Hoerner*, 362 Pa.Super. 588, 525 A.2d 377 (1987).

In the present case, no mention was made to the jury of the fact that Butler in fact took the polygraph examination or what the results were. The trial judge not only refused the request for a mistrial, but also declined to give a cautionary instruction to the jury because in his opinion such an instruction would only have emphasized the statement in the minds of the jurors. Based on these facts we cannot say that the trial court abused its discretion. Moreover, there has been no prejudice to Butler since the jury returned a verdict in his favor.

■ Finally, Butler argues that delay damages under Pa.R.C.P. 238 should have been awarded to him because his action involved personal injury and property damage. Rule 238 [10] provides for the assessment of delay damages in certain circumstances where a plaintiff seeks "monetary relief for bodily injury, death or property damage...."

**10.** We note that after this case was argued, the Supreme Court amended Rule 238 on November 7, 1988. However, the language of Rule 238 pertinent to the issues raised in this case is identical in both the former and the present rule.

Without citing any authority directly applicable or even applicable by analogy, Butler contends that his emotional distress, anguish and humiliation caused by the actions of the defendants, and the damage to his reputation, must be construed to constitute "bodily injury" within the meaning of Rule 238. He also argues that the interference with his ability to obtain employment must be perceived as "property damage" within the meaning of the Rule. We do not agree.

In *Wainauskis v. Howard Johnson Co.*, 339 Pa.Super. 266, 488 A.2d 1117 (1985), the plaintiff sued the defendant for, *inter alia*, malicious prosecution because it had fired her and pressed criminal charges of theft against her of which she was acquitted. On appeal, the plaintiff argued that Rule 238 delay damages should have been added to the verdict in her favor on the claim for malicious prosecution because she had sought compensation for, among other things, past and future medical expenses, mental anguish, humiliation, and injury to her reputation. The Court held that an action for malicious prosecution does not constitute a claim for "bodily injury" under Rule 238. Therefore the refusal to award her delay damages was upheld.

In concurring with the conclusion of the majority in *Wainauskis,* Judge Brosky elaborated on the issue of what constitutes "bodily injury" within the meaning of Rule 238. He stated the following:

As noted by the majority, damages for malicious prosecution "may include compensation for mental anguish, humiliation, and injury to feelings." *Shelton v. Evans*, 292 Pa.Super. 228, 233, 437 A.2d 18, 21 (1981). Instantly, appellant sought damages for such injuries. Certainly a broad construction of the terms "bodily injury" could encompass these types of injuries. The question, however, is whether we should construe the term so broadly. For the reasons that follow, I conclude that we should not do so.

The primary purpose of Rule 238 is to encourage pre-trial settlement of civil actions for bodily injury, death or

property damages in order to alleviate the judicial congestion and delay caused by these types of actions. *Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 436 A.2d 147 (1981). I believe that the number of malicious prosecution actions is so small relative to the number of actions for bodily injury (of a less broadly defined type), death, or property damage that I do not believe they contribute significantly to judicial congestion and delay. Also, I believe the difficulty in computing the proper amount of compensation for the type of injuries involved instantly tends to make pre-trial settlement so difficult that it would make the encouragement of Rule 238 of little value.

*Wainauskis, Id.,* 339 Pa.Super. at 283, 488 A.2d at 1125.

In the present case, Butler claims that he is entitled to Rule 238 delay damages because his claims for emotional injury, loss of reputation, humiliation and mental anguish constitute claims for "bodily injury" under Rule 238. We find his claim for these damages in the present case to be indistinguishable from the plaintiff's claim in *Wainauskis* for medical expenses, mental anguish, humiliation and injury to her reputation as a result of malicious prosecution. In both *Wainauskis* and the present case, the plaintiffs successfully sued their former employers for the same types of damages resulting from the employer wrongly accusing them of committing a crime and pressing unfounded criminal charges against them. We therefore conclude that, as with the plaintiff's claims in *Wainauskis,* Butler's allegations in the present action do not constitute claims for "bodily injury" within the meaning of Rule 238.

■ We also are unpersuaded that interference with one's right to pursue an occupation, is the type of property to which Rule 238 applies. Our research has revealed no case law expressly delineating what types of property come within the meaning of the rule. However, for the following reasons, we conclude that Rule 238 applies only to damage to *tangible* personal property.

We begin our analysis be echoing Judge Brosky's comments in his concurring opinion in *Wainauskis* quoted above. While the right to pursue an occupation of one's own choosing may be a right akin to a property right, see *Pirillo v. Takiff,* 462 Pa. 511, 341 A.2d 896 (1975), the question here is whether we should construe the term "property" in Rule 238 so broadly as to encompass not only tangible property such as automobiles or homes, but also intangible property such as the right to pursue an occupation. Just as Judge Brosky noted in *Wainauskis* that the number of malicious prosecution cases is quite small in comparison to the number of actions for bodily injury (as narrowly defined in *Wainauskis* ), death, or property damage, so too are the number of claims for interference with the right to pursue an occupation of one's own choosing small in comparison to the number of suits for bodily injury, death, or property damage (to tangible property). Also, the difficulty in computing the appropriate amount of damages in a claim for damages to intangible property would also make pre-trial settlement difficult. Therefore, the word "property" in Rule 238 should not be construed so broadly as to encompass damage to *intangible* property as well as damage to tangible property.

We find support for this conclusion in *Contractor Utility Sales Co. v. Certain–Teed Corp.,* 748 F.2d 1151 (7th Cir. 1984). In *Contractor Utility Sales,* the plaintiff sued the defendant to recover its lost profits as a result of the defendant's improper machinations to obtain the plaintiff's customers. Although the plaintiff obtained a judgment in its favor, the court held that Rule 238 delay damages should not be awarded because the phrase "property damage" in Rule 238 did not include a decline in profits. The court stated, "We consider it more probable that the rule contemplates motor vehicle collisions, where 'bodily injury, death or property damage' are often likely to occur in the same tort litigation." *Id.,* at 1157.

Although *Contractor Utility Sales* is not directly applicable to the present case because it involved a breach of

contract and fraud action rather than a tort action, the nature of the damages sought is similar, lost profits as compared with lost income. We also are inclined to agree with the conclusion that Rule 238 was intended to apply to actions involving physical bodily injury, or death, or damage to tangible property as in automobile accidents.

We also find support for our interpretation of Rule 238 in *Wescoat v. Northwest Savings Association*, 378 Pa.Super. 295, 548 A.2d 619 (1988) wherein the Court held that the phrase "injury to property," in a statute meant damage to *tangible* property only. In *Wescoat*, the plaintiffs sued their mortgagee for failure to obtain a credit-life insurance policy for them, and for failure to notify them when the insurance policy was not issued. One of the issues which had to be resolved was the applicability of the Comparative Negligence Statute, 42 Pa.C.S. § 7102. This statute expressly provides that it applies to all actions for negligence resulting in "death or injury to person or property." In finding that the statute did not apply to the facts in *Wescoat*, the court stated:

> The statute does not apply to all actions for negligence, but only to those resulting in death or injury to person or property. Clearly, the plaintiffs suffered no injury to their person. We are also of the opinion that they suffered no damage to their property. *There was no tortious episode that caused damage to their tangible property, real or personal, and we hold that such is required to bring the provision of the Act into play.*

*Wescoat, Id.*, 378 Pa.Superior Ct. at 300, 548 A.2d at 621 (Emphasis added).

Just as with the Comparative Negligence Act, it is clear that Rule 238 does not apply to all civil actions seeking monetary relief, but only to those seeking monetary relief for bodily injury, death, or property damage. Therefore, as the court in *Wescoat* interpreted the unembellished phrase "injury to property" to require injury to *tangible* property, so too we interpret the plain phrase "property damage" in Rule 238 to require injury to *tangible* property. Because

Butler has suffered no loss to *tangible* property, we conclude that the trial court did not err in refusing to award delay damages under Rule 238.

Judgment affirmed.

McEWEN, J., files a dissenting statement.

McEWEN, Judge, dissenting:

I have such admiration for the careful analysis and fine expression of conclusion provided by the author of the majority view, that I am hesitant to take a different position. However, I am so repulsed by the vile and inhuman conduct of Barry Friedberg and Lee Friedberg that I am compelled to opine that whatever the procedural deficiency in the record before us, the punitive damage awards are so inadequate that the jury must have miscomprehended its role.

The esteemed Judge Gwilym A. Price, Jr. stated for this Court:

> When a jury reaches an ambiguous or improper verdict, one proper remedy is to permit them to correct the mistake or ambiguity. Moreover, when a verdict shows confusion and lack of understanding of the issues involved, a new trial may be granted.

*Rusidoff v. DeBolt Transfer, Inc.*, 251 Pa.Super. 208, 211–212, 380 A.2d 451, 453 (1977) (citations omitted). This Court subsequently stated, in an opinion authored by the distinguished Judge Frank J. Montemuro, Jr.:

> The jury's verdict was so inconsistent with the determination of liability that we can only conclude that it was premised upon some mistake or misapprehension. Under these circumstances we find the verdict inconsistent with the determination of liability that we can only conclude that it was premised upon some mistake or misapprehension. Under these circumstances we find the verdict to be shocking and the refusal of the trial court to grant a new trial to be an abuse of discretion. Consequently, that decision must be reversed.

*McIntyre v. Clark,* 314 Pa.Super. 552, 558, 461 A.2d 295, 298 (1983).

While I must concede that these holdings addressed compensatory damage verdicts, there appears no reason why the same rationale should not apply when a jury has determined that the behavior of a party has been so abhorrent that punitive damages should be awarded, but then proceeds to an award of an amount which is totally inconsistent with the repugnance of the wrongful behavior and the damage wrought.

> Section 908(1) of the Restatement (Second) of Torts states that punitive damages are damages "... awarded against a person to *punish* him for his outrageous conduct". (emphasis added). In assessing punitive damages, the trier of fact may consider *the character of the tortfeasor's act, the nature and extent of his victim's harm,* and the wealth of the tortfeasor.

*Kirkbride v. Lisbon Contractors, Inc.,* 521 Pa. ——, ——, 555 A.2d 800, 802 (1989) (emphasis supplied).

First, it was not enough for the Friedberg brothers to enjoy the enhanced station in life, affluence, and social advantage attendant the preferred role of employer which the fates had bestowed upon them, while imposing upon Gibson Butler the rank of their employee. Instead, the brothers engaged in the perfidious undertaking of snatching from Gibson Butler the sole characteristic which they all shared equally, reputation.

Second, no more sacred right is enjoyed by a citizen than the presumption of innocence. Moreover, the entire focus of our criminal justice system is to protect the innocent or, as the proverb, become principle, proclaims: it is better that ninety-nine guilty go free than that one innocent be convicted. But neither law, nor Constitution, nor even Commandment can protect the victim of false accusation, contrived evidence, and perjured testimony.

Third, the Constitution of Pennsylvania, since the very earliest days of this Commonwealth, has focused upon the intrinsic dignity of each of its citizens, and, in doing so,

equated reputation as sacred as life and liberty, for as the very first section of Article I of the current Constitution of 1874 proclaims:

### Inherent Rights of Mankind

Section 1. All men are born equally free and independent, and have certain inherent an indefeasible rights, among which are those of enjoying and defending life and liberty, of *acquiring, possessing and protecting* property and *reputation,* and of purusing their own happiness. (emphasis supplied).

Though one's property passes to others, and one's bones become dust, one's reputation remains. The shadow of the man himself disappears in death, but the shadow upon his reputation survives and survives to become history and to be cast upon his children and on to their issue. Thus, reputation is a unique attribute and, once stained, so irretrievably blemished that even punitive damages are inadequate recompense for the harm. Clearly, such outrageous conduct merits imposition upon the transgressors of a far more punitive sanction than the jury delivered.

Thus it is that I would grant a new trial solely upon the issue of punitive damages.