Eugene WHYTOSEK and
Susanne E. Whytosek

v.

Carl C. RADEMAN.

Civ. A. No. 95–859.

United States District Court,
E.D. Pennsylvania.

July 26, 1995.

Memorandum Denying Reconsideration
Aug. 14, 1995.

Thomas F. Sacchetta, Sacchetta & Baldino, Media, PA, for Plaintiff.

James G. Sheehan, Assistant U.S. Attorney–Civil Division, William B. Petersen and David H. Resnicoff, U.S. Attorney's Office, Philadelphia, PA, for Defendant.

## MEMORANDUM

BARTLE, District Judge.

Plaintiff Eugene Whytosek ("Whytosek"), a letter carrier with the United States Postal Service, brought this action for assault and battery in state court against defendant Carl C. Rademan ("Rademan"), his immediate supervisor. Defendant, represented by the U.S. Attorney, removed the suit to federal court pursuant to the provisions of 28 U.S.C. § 2679(d)(2). He did so based on a certification that defendant was acting within the scope of his employment. Presently before this court is defendant's motion to substitute the United States for him pursuant to 28 U.S.C. § 2679(d)(1).[1]

■ Under the Federal Employees Liability Reform and Tort Compensation Act of 1988, which amended the Federal Torts Claims Act, 28 U.S.C. §§ 1346, 2671–2680, the Attorney General may certify that the defendant employee was acting within the scope of his employment and substitute the United States as the defendant. Specifically, § 2679(d)(2) provides that:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States.... Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

28 U.S.C. § 2679(d)(2). The United States Attorney for the Eastern District of Pennsylvania, on behalf of the Attorney General, has certified that Rademan was acting within the scope of his employment at the time of the incident in issue. The Supreme Court recently held that such a certification is not conclusive but is subject to judicial review. *Gutierrez de Martinez v. Lamagno,* —— U.S. ——, ——, 115 S.Ct. 2227, 2236, 132 L.Ed.2d 375 (1995). The Court of Appeals for the Third Circuit, which had previously ruled that such a certification was reviewable, has explained how a district court should conduct such a review. *See Melo v. Hafer,* 13 F.3d 736, 747 (3d Cir.1994). A district court is not restricted to the facts alleged in a plaintiff's complaint when reviewing such a certification but may hold an evidentiary hearing to determine whether the defendant was acting within the scope of his employment. *Id.* at 746. As a result, this court required the Attorney General to file a more detailed explanation in support of the certification. Thereafter, on July 17, 1995, this court held an evidentiary hearing in order to determine whether Rademan was acting within the scope of his employment during the alleged assault and battery.

■ This action arises out of an incident that occurred at the Bustleton station of the United States Post Office in Philadelphia. As noted above, both plaintiff and defendant are postal employees. Plaintiff alleges in his complaint that on January 12, 1994, Rademan, his supervisor, "was involved in a verbal confrontation with the plaintiff and assaulted plaintiff, Eugene Whytosek, by pushing him in his chest causing him to fall backwards." The plaintiff has withdrawn all negligence

1. The defendant moves for substitution under 28 U.S.C. § 2679(d)(1). However, we believe that because this action began in state court, substitution should be sought under § 2679(d)(2).

claims and alleges only intentional conduct on the part of the defendant.[2]

At the July 17, 1995 hearing, both Whytosek and Rademan testified and agreed on certain facts. There had been a heavy snowstorm on January 11, 1994 and Whytosek did not want to go out on his route that day. Rademan ordered him to do so but Whytosek approached a scheduling supervisor who permitted him to work inside. The following day, January 12, 1994, conditions were still icy and cold. Because of the bad weather, some first class mail was late in arriving at Bustleton station. The letter carriers were sorting mail when Rademan told those under his supervision to discontinue that activity and to start to deliver the mail already in hand. Whytosek, however, continued to sort the late mail because he believed that an earlier direct order from Rademan to sort his mail superseded Rademan's general order to all carriers. Rademan states that he approached Whytosek to determine why Whytosek was ignoring his order.

At this point, Rademan's and Whytosek's accounts diverge. Rademan testified that when he asked Whytosek why he was not following his instruction, Whytosek became irate and pushed a tub of mail at Rademan which skinned Rademan's knee. According to Rademan, he then stepped over the tub of mail to confront Whytosek. They stood "shirt to shirt." After an exchange of heated words and profanity, Rademan stated that Whytosek placed the palms of his hands on Rademan's shoulders and pushed him. Rademan admits that at about this time, he clenched his right fist and at some point said to Whytosek that he would like to take him on outside.

Whytosek, on the other hand, testified that he did not push a tub of mail at Rademan. Rather, according to Whytosek, Rademan moved closer to him once words were ex-

changed so as to stand "chest to chest." Whytosek stated that Rademan then pushed him with his chest, causing Whytosek to stumble backward toward a case of mail. As Whytosek explained it, he pushed Rademan with his hands in order to get Rademan off of him as he was being pushed backward. Whytosek testified that Rademan told him, "I want to hit you one time." Alexander Oscilouwski, a letter carrier sorting mail near Whytosek, grabbed Rademan's fist and told him to calm down.

David Farren, the station manager at Bustleton, testified that carrier supervisors are trained to step closer to a carrier and may raise their voices in certain situations involving insubordinate carriers. However, Farren was emphatic that supervisors are instructed never to touch subordinates.

The government does not argue that what occurred involved negligence. Instead, it contends that even if the court determines that Rademan committed an intentional tort, such determination would not preclude a finding that Rademan was acting within the scope of his employment. Under federal statutory scheme, we look to the law of the state where the incident occurred, in this case Pennsylvania.[3] The government maintains that under Pennsylvania law, an employee may be acting within the scope of his employment even while committing an intentional tort or criminal act. The government relies on *Butler v. Flo–Ron Vending Co.*, 383 Pa.Super. 633, 557 A.2d 730, 736 (quotation omitted), *appeal denied*, 523 Pa. 646, 567 A.2d 650 (1989) and *Advanced Power Sys., Inc. v. Hi–Tech Sys., Inc.*, No. 90–7952, 1994 WL 116121, at *3, 1994 U.S.Dist. LEXIS 3691, at *8 (E.D.Pa. Mar. 21, 1994) (quotation omitted). We do not find the cases helpful to the government. *Butler*, 557 A.2d at 736,

---

2. Plaintiffs' complaint originally alleged assault and battery, negligence, punitive damages, and loss of consortium. Plaintiffs' counsel has confirmed that he will be amending the complaint to drop the negligence count. Whytosek's wife, Susanne Whytosek, is also a named plaintiff. She brings a loss of consortium claim against Rademan. The other causes of action appear to be brought only by Whytosek. Thus, for purposes of this opinion, when we refer to "plaintiff" we are simply describing Whytosek.

3. Under 28 U.S.C. § 1346(b), "the law of the place where the act or omission occurred" governs any action for negligence or wrongful act or omission by any government employee acting within the scope of his office or employment. In this action, the place of the alleged acts is Pennsylvania.

and *Advanced Power Sys., Inc.*, 1994 WL 116121, at *3, 1994 U.S.Dist. LEXIS 3691, at *8–9, cite the Restatement (Second) of Agency § 228 as germane to deciding whether an employee acted within the scope of his employment. That section defines conduct as within the scope of employment as follows:

(1) Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master, and (d) if force is intentionally used by the servant against another, the use of the force is not unexpectable by the master.

The Court of Appeals for the Third Circuit has predicted that the Supreme Court of Pennsylvania would adopt the standard set forth in the Restatement (Second) of Agency § 228. *Aliota v. Graham*, 984 F.2d 1350, 1358 (3d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993).

Rademan, at the very least, put himself "shirt to shirt" or "chest to chest" with Whytosek, clenched his fist and made a verbal threat of physical harm. Rademan touched Whytosek, his subordinate. Such behavior is clearly forbidden. We cannot believe that such conduct is "expectable" or serves any purpose of his employer, the United States Postal Service.

The third case cited by the government is *Ash v. 627 Bar, Inc.*, 197 Pa.Super. 39, 176 A.2d 137 (1961). The court in *Ash* held that a bartender acted within the scope of his employment when a customer was injured as a result of what the court deemed "the seeds of disorder sown by the bartender." 176 A.2d at 139–40. The court found that the acts of the bartender were "fairly adapted to accomplish the purpose of the employment, to wit: to encourage the sale of liquor and

beer and the use of the amusement machines from which the master derives a profit." *Id.*, 176 A.2d at 140. Even assuming that *Ash* was correctly decided, neither Rademan's nor Whytosek's conduct was "fairly adapted to accomplish" any legitimate purpose of the United States Postal Service.

Regardless of where the whole truth lies, it is clear and the court finds that the behavior of both parties was intentional and in no way involved negligence. We find that defendant Rademan was not acting within the scope of his employment during his altercation with Whytosek on January 12, 1994. As noted above, his conduct was not "expectable" to the United States Postal Service, and he certainly was not furthering any purpose of the United States Postal Service, or the public it serves.

Accordingly, the motion of the defendant Carl Rademan to substitute the United States as the defendant will be denied.[4]

## MEMORANDUM ON RECONSIDERATION

Plaintiff Eugene Whytosek ("Whytosek"), a letter carrier with the United States Postal Service, alleges in his complaint that defendant Carl C. Rademan ("Rademan"), his immediate supervisor, committed an assault and battery on him at the Bustleton Station of the post office. Intentional conduct only and not negligence is asserted. Defendant, represented by the United States Attorney, removed the suit to federal court pursuant to the provisions of 28 U.S.C. § 2679(d)(2). Rademan moved to substitute the United States as defendant, pursuant to 28 U.S.C. § 2679(d)(1), on the ground that he was acting within the scope of his employment at the time of the incident. After a hearing, the court denied the motion to substitute. The court found that Rademan was not acting within the scope of his employment. Pres-

4. This case now involves only state law claims between private parties. It is undisputed that diversity of jurisdiction does not exist, and it appears that the damages are well under the requisite jurisdictional amount, *see* 28 U.S.C. § 1332(a). However, 28 U.S.C. § 2679(d)(2) provides that "[t]he certification of the Attorney General shall conclusively establish scope of office or employment for removal purposes." The

Court of Appeals for the Third Circuit has held that this language prohibits remand even if the court determines that the employee was not acting within the scope of his employment. *Aliota*, 984 F.2d at 1356. *But see Gutierrez de Martinez*, —— U.S. at —— – ——, 115 S.Ct. at 2239–40 (Souter, J., dissenting) (raising a possible constitutional infirmity).

ently before this court is defendant's motion for reconsideration.

Under the federal statutory scheme, we look to Pennsylvania law to determine whether an employee was acting within the scope of his employment.[1] The Restatement (Second) of Agency § 228, which the Court of Appeals for the Third Circuit has predicted the Supreme Court of Pennsylvania would adopt, *see Aliota v. Graham*, 984 F.2d 1350, 1358 (3d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993), provides:

> (1) Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master, and (d) if force is intentionally used by the servant against another, the use of the force is not unexpectable by the master.

In essence, defendant argues that this court erred when it found that defendant's actions in assaulting his subordinate were not "expectable" and that his actions did not serve any purpose of his employer, the United States Postal Service. In support of his motion for reconsideration, defendant attaches a declaration of David F. Farren ("Farren"), the present Station Manager at the Bustleton Station. Farren states that:

> it is not unexpectable to me that where a Supervisor confronts an abusive and repeatedly insubordinate Carrier by raising his voice and stepping towards the Carrier in a tight space littered with mail, a Supervisor would intentionally stand toe to toe with a Carrier so that their chests touch, or would lean into the Carrier slightly, even though such contact is clearly prohibited.

Farren further declares that "I would not be shocked if a Supervisor intentionally bumps or pushes a Carrier in the course of a heated argument in close quarters, even though such conduct is prohibited."

This declaration, however, does not help the defendant. First, we did not find that

Whytosek was "repeatedly insubordinate" to Rademan. Whytosek's insubordination did not rise to this level. More importantly, while Farren declares that he would not be shocked if a supervisor intentionally bumped or pushed a carrier, he is silent with respect to the court's finding that Rademan made a fist and said that he would like to take Whytosek on outside. At no point does Farren say that he would not be shocked by such misconduct or that such conduct is "not unexpectable."

Defendant also relies on Comment i to § 245 of the Restatement (Second) of Agency. It explains that:

> Although a servant is employed in a matter not involving the use of force, he may nevertheless cause the master to be liable for its use if he is in a position which requires contacts with third persons under circumstances likely to lead to disputes. In determining whether such conduct is in the scope of employment, the tendency of those engaged in that kind of work to settle disputes between them by the use of force is an important matter. Thus, a servant employed to sell intoxicating liquor might well cause the employer to be liable for harm caused by a fight starting over an argument as to whether the customer had received the right change, whereas a bank might not be found responsible to a customer for the act of a paying teller resenting a similar complaint by one cashing a check.

Clearly a United States Post Office is more analogous to a bank than a bar. There was no credible evidence that postal employees have a "tendency ... to settle disputes between them[selves] by the use of force." Indeed, it would be a sad day when it is "not unexpectable" for letter carriers and their supervisors, all public servants charged with the important responsibility of delivering the mail, to engage in the type of intentional misbehavior exhibited here. We find that Rademan's actions were not expectable within the meaning of Restatement (Second) of Agency § 245.

---

**1.** 28 U.S.C. § 1346(b) provides that "the law of the place where the act or omission occurred" governs any action for negligence or wrongful act or omission by any government employee acting within the scope of his office or employment.

We now turn to the question whether Rademan was "actuated, at least in part, by a purpose to serve the master," that is the United States Postal Service. Restatement (Second) of Agency § 228. Comment f to § 245 of the Restatement (Second) of Agency explains:

> [t]he master, however, is relieved from liability under the rule stated in this Section if the servant has no intent to act on his master's behalf, although the events from which the tortious act follows arise while the servant is acting in the employment and the servant becomes angry because of them. The fact that the servant acts in an outrageous manner or inflicts a punishment out of all proportion to the necessities of his master's business is evidence indicating that the servant has departed from the scope of employment in performing the act.

While Rademan did testify that he was only trying to serve the interests of the Postal Service during this dispute and that his only objective was to have the mail delivered in a safe manner, we find such testimony not to be credible. We do not accept defendant's argument that "his actions were for the sole purpose of doing his job." (Brief of Defendant at 1). The postal regulations explicitly forbid what Rademan did here. We find that Rademan was simply acting out his own personal frustrations in an inappropriate manner. Rademan had no intent to act on behalf of the United States Postal Service in standing "chest to chest" with Whytosek, in touching Whytosek, in clenching his fist, and in stating that he wanted to take a shot outside at Whytosek.

The court stands by its decision that Rademan was not acting within the scope of his employment as a supervisor with the United States Postal Service when the incident in question occurred. Accordingly, this court will deny the defendant's motion for reconsideration.