DLD-302                                                                              NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2078
_____

DAVID DISTEFANO,
                                                 Appellant

v.

MACY'S RETAIL HOLDINGS, INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 12-cv-06745)
District Judge:  Honorable Norma L. Shapiro
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
August 20, 2015

Before:  FISHER, SHWARTZ and GREENBERG, Circuit Judges

(Opinion filed: August 27, 2015)
_____

OPINION*
_____

_____
* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Appellant David DiStefano appeals from the District Court's order granting the summary judgment motion of Appellee Macy's Retail Holdings, Inc. ("Macy's"). For the reasons below, we will affirm the District Court's judgment.

This action arose out of a series of fraudulent reimbursements made by a former Macy's sales associate, Lisa McCabe, at Macy's Neshaminy Mall store in Bensalem Township, Pennsylvania. In short, McCabe would process a return and apply full credit for a previously purchased item to her own or a customer's credit card, Macy's gift card, or Macy's "EZ exchange" card, without actually returning any merchandise. After discovering that McCabe had processed an unusually large number of returns, Macy's security personnel began an internal investigation into her activities in or around September 2010. On November 3, 2010, Frank DeCicco, Macy's Director of Loss Prevention, confronted McCabe with the information he had gathered, including surveillance video footage that showed her processing reimbursements at her register without any customer or merchandise present. DeCicco also described to McCabe video footage that he believed showed her processing a fraudulent reimbursement for an unidentified man on October 24, 2010. McCabe declined to view the video footage, but identified the man as Appellant David DiStefano, her sometime boyfriend.

Macy's security personnel drafted a "Loss Prevention Statement" summarizing McCabe's interview and describing the fraud. In that statement, McCabe admitted to processing fifty-eight fraudulent reimbursements between April and October 2010, usually without the knowledge of the friend or family member who originally purchased

the unreturned merchandise. McCabe also stated, however, that some fraudulent returns were made with DiStefano's cooperation. She recounted the incident depicted in the surveillance video as follows: "On 10/24/10 David D[i]Stefano purchased a microwave from [the] Oxford Valley Macy[']s. David then came to [the] Neshaminy Macy[']s approximately 30 minutes later and asked me to return the microwave. I did the return and gave David the EZ exchange card back with $149.99 on it. David never brought the microwave in and I never took back any merchandise for that return. I caused a loss to the company of $149.99." McCabe signed the Loss Prevention Statement in two locations, initialed all three pages, and added a handwritten paragraph in which she confirmed that the preceding statement was voluntary and true, apologized, and promised to pay back the money.

The receipts corresponding to the October 24, 2010 transaction show that at 5:33 p.m., a microwave oven was purchased at Macy's Oxford Valley Mall store with a gift card and an EZ exchange card. The same microwave oven was returned to Macy's Neshaminy Mall store at 6:00 p.m., and the purchase price was credited to the same gift card number used to buy the microwave. The reimbursement was processed at McCabe's register, using her sales associate number. The receipts do not identify the buyer of the microwave by name, and there is no other way to identify the owner of the gift card or EZ exchange card used to make the purchase or return. The surveillance video footage from that day does not show anyone returning a microwave oven at McCabe's register around 6:00 p.m. Instead, the video shows McCabe speaking to the man she later identified as DiStefano during a period time-stamped as approximately 5:50 p.m. to 5:51

3

p.m.[1] The video also shows McCabe using her register, printing out a slip of paper, and handing the paper to DiStefano. DeCicco testified that other video footage showed customers making legitimate purchases directly before and after this interaction, and that no other returns were processed at McCabe's register in the hour before or the hour after her interaction with DiStefano. He confirmed that McCabe herself could not have purchased the microwave oven at 5:33 p.m. at the Oxford Valley Macy's.

After interviewing McCabe, DeCicco contacted Bensalem Police to report the thefts. When police officers arrived at the store, DeCicco described McCabe's statement, the receipts reflecting the fraudulent October 24 return, and the surveillance video. Police officers arrested McCabe and filed an affidavit of probable cause to arrest DiStefano. McCabe's employment was terminated and she later made restitution payments to Macy's totaling $4,000.

During McCabe's arrest, on the evening of November 3, 2010, DiStefano was in the Neshaminy Mall parking lot. Although a warrant had not yet issued, police officers arrested DiStefano in the parking lot and filed a Police Criminal Complaint accusing him of three Pennsylvania crimes: theft by deception, receiving stolen property, and conspiracy to commit theft by deception. DiStefano was held in custody overnight. The following day he posted bail and was released pending trial. In August 2011, after several preliminary hearings, the prosecution withdrew all charges against DiStefano.

---

[1] DeCicco accounted for the time discrepancy between the receipts and the video by explaining that the receipts are time-stamped according a national clock, uniform to all Macy's stores and registers, while the surveillance video is time-stamped according to a separate clock unique to the Neshaminy Mall store.

In October 2012, DiStefano filed a counselled complaint against Macy's in the Philadelphia Court of Common Pleas, bringing state law claims for false arrest, false imprisonment, and malicious prosecution. Macy's removed the action to the United States District Court for the Eastern District of Pennsylvania on the basis of diversity jurisdiction and the case proceeded to arbitration. After an arbitration award was entered in Macy's favor, DiStefano requested a trial de novo before the District Court. On April 1, 2014, the District Court granted Macy's motion for summary judgment, finding that, at the time he reported his suspicions to the police, DeCicco had probable cause to believe DiStefano had committed a crime. DiStefano filed a timely pro se notice of appeal.

We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's order granting summary judgment de novo and review the facts in the light most favorable to the nonmoving party. Burns v. Pa. Dep't of Corr., 642 F.3d 163, 170 (3d Cir. 2011).

The absence of probable cause is an element common to all three of DiStefano's claims. An arrest based on probable cause cannot support a claim for false arrest or false imprisonment under Pennsylvania law. See Renk v. City of Pittsburgh 641 A.2d 289, 293 (Pa. 1994). See also Gwynn v. City of Philadelphia, 719 F.3d 295, 304 n.4 (3d Cir. 2013) (citing Renk, 641 A.2d at 293). A Pennsylvania common law malicious prosecution claim also requires a showing that the defendant initiated a criminal proceeding without probable cause. See Merkle v. Upper Dublin Sch. Dist., 211 F.3d

782, 791 (3d Cir. 2000).[2]  "Probable cause exists when 'the facts and circumstances which are within the knowledge of the police officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime.'"  Renk, 641 A.2d at 293 (quoting Commonwealth v. Rodriguez, 585 A.2d 988, 990 (Pa. 1991)).  See also Miller v. Pennsylvania R. Co., 89 A.2d 809, 811-12 (Pa. 1952) (defining probable cause more broadly as "a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense").  Generally, the existence of probable cause is a question of fact for the jury to determine.  Merkle, 211 F.3d at 788.  "However, a district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to [the] Plaintiff, reasonably would not support a contrary factual

---

[2] A private person or entity cannot be held liable for the initiation of criminal proceedings by a public official unless that person "instigates" the arrest or imprisonment. "Instigation consists of words or acts which direct, request, invite or encourage the false imprisonment itself. . . . It is not enough for instigation that the actor has given information to the police about the commission of a crime, or has accused the other of committing it, so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them." RESTATEMENT (SECOND) OF TORTS § 45A(b).  Moreover, "it is not an instigation of a false arrest where the actor has requested the authorities to make a proper and lawful arrest, and has in no way invited or encouraged an improper one, or where he has requested an arrest at a time when it would be proper and lawful, and it is subsequently made at a time when it has become improper." Id.  We note that DiStefano has pointed to nothing in the record suggesting that DeCicco did anything more than provide police officers with the information he had, or suggesting that Macy's personnel had any further role in the officers' decision to arrest DiStefano, or in the District Attorney's decision to prosecute him.

finding, and may enter summary judgment accordingly." Id. at 788-89 (quotation and citation omitted).

In opposition to Macy's motion for summary judgment, DiStefano admitted that he was the man shown in the October 24, 2010 surveillance video, but argued that there was insufficient probable cause for his arrest or prosecution for a variety of reasons. First, he argued that the Loss Prevention Statement was false, because McCabe refused to confirm that statement at her 2013 deposition in this civil suit.[3] He also argued that the video footage, which does not include any audio recording, shows nothing more than a conversation between him and McCabe, and the October 24 receipts do not positively identify him as the person who purchased or returned the microwave oven. Further, he argued that Macy's personnel had a duty to question him and conduct some further investigation before they contacted the police. And finally, he argued that, under a theory of agency or respondeat superior, Macy's itself is responsible for the "false" statement of

---

[3] McCabe repeatedly failed to appear for depositions in this civil action. Eventually, the District Court issued a bench warrant for her arrest, found her in contempt, and held her deposition in court. During that deposition, McCabe testified that "d[id] not recall" any details of the events in question. She could not recall ever making fraudulent returns, and could not recall the substance of her interview with DeCicco, or signing the Loss Prevention Statement; nor could she recall why she had been arrested, the name of her criminal defense attorney, whether she had made any restitution payments to Macy's, or whether she had agreed to cooperate with the Commonwealth in its prosecution of DiStefano. When asked whether the portion of her statement implicating DiStefano was true, she testified that she "ha[d] no idea," and "c[ould]n't recall the statement at all." Then, when asked if DiStefano had ever made a false return at Macy's, she replied, "Not that I recall, no. I would never do something like that, no." However, she confirmed that the handwriting and signatures on the Loss Prevention Statement were her own, and she refused to testify that she had been coerced into making the 2010 statement, or that the statement was actually false.

its employee McCabe, and therefore responsible for providing false information to the police. DiStefano repeats essentially the same arguments in support of his appeal.

We agree with the District Court that the undisputed factual record establishes ample probable cause for DiStefano's arrest. Certainly, the parties dispute DiStefano's actual role in the fraud, but his guilt or innocence is immaterial to whether, as of November 3, 2010, DeCicco had probable cause to report his suspicions to the police. It is equally irrelevant that criminal charges were later withdrawn or that McCabe partially repudiated her statement three years later. DeCicco, not McCabe, provided information to the police. At that time, DeCicco possessed not only McCabe's signed statement implicating DiStefano, but also receipts corroborating her confession, and video footage placing DiStefano at her register within minutes of at least one fraudulent transaction that required an accomplice. Even accounting for the time-stamp discrepancy and the lack of personal identifiers on the receipts, the evidence as a whole suggested that DiStefano had helped McCabe defraud Macy's. See Kelly v. Gen. Teamsters, Chauffeurs & Helpers, Local Union 249, 544 A.2d 940, 942–43 (Pa. 1988) (holding that a co-worker's confession accusing fellow employee of theft, in conjunction with other evidence and despite employee's eventual acquittal, was sufficient to establish probable cause as a matter of law).[4]

---

[4] Although the District Court did not address DiStefano's agency argument, we note that a corporation is liable for the acts of its employees only when those acts are committed during the course of and within the scope of employment. Butler v. Flo–Ron Vending Co., 557 A.2d 730, 736 (Pa. Super. Ct. 1989). Under Pennsylvania law, conduct is within the scope of employment "'if, but only if: (a) it is of the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits[; and]

Accordingly, because this appeal does not raise a substantial question, we will summarily affirm the judgment of the District Court. Appellant's request for oral argument is denied.

---

(c) it is actuated, at least in part, by a purpose to serve the master[, . .] .'" Id. (quoting RESTATEMENT (SECOND) OF AGENCY § 228). In Butler, for example, the Pennsylvania Superior Court found that a corporation was liable for evidence planted by and false statements made to the police by supervisory employees, where it was within the nature of their employment that they would be responsible for working with authorities to solve a crime against the corporation. Id. at 737. Here, by contrast, McCabe's allegedly false statement was made during an interview which took place only as a result of Macy's investigation into her criminal activities, in which she confessed to defrauding her employer, and which led to her arrest and termination. That interview was not part of McCabe's duties as a sales associate, nor was it conduct of the type McCabe was employed to perform.